## ABIAL LIBBY *vs.* FRANK E. TOBEY.

## Sagadahoc.   Opinion February 21, 1890.

*Corporation.   Stockholder.   Creditor.   Unpaid stock.   R. S., c. 46,*
*§§ 45, 46, 47.*

82  397
86  494
82  397
89  488
82  397
92  451
92  397
193  164

When a judgment creditor of a corporation seeks to recover the amount of such judgment or any part thereof, from a stockholder who has not fully paid for his stock, he must bring his case within the provisions of R. S., c. 46, §§ 46, 47, by showing:—

(1.)   A lawful and *bona fide* judgment, recovered within two years next prior to his action against the stockholder.

(2.)   That the defendant subscribed for or agreed to take stock in the corporation, and has not paid for the same as defined in § 45.

(3.)   That his original cause of action was contracted during the defendant's ownership of such unpaid stock.

(4.)   That the proceedings to obtain such judgment against the corporation were commenced during the defendant's ownership of such unpaid stock, or within one year after its transfer was recorded on the corporation books.

To relieve a stockholder from liability for stock subscribed, or agreed to be taken, payment therefor must be made *bona fide* in cash, or in some other matter or thing at a *bona fide* and fair valuation thereof.

Payment of stock in anything except money will not be regarded as payment, except to the extent of the true value of the property received in lieu of money.

The individual liability of a stockholder for the debt of the corporation depends entirely upon express provisions of statute law.   There being no contract express or implied between him and the plaintiff, the statute is to be construed strictly.

The remedy now provided by statute exists only against those "who have subscribed for or agreed to take stock in said corporation and have not paid for the same," etc.

The statute contemplates a transaction or contract with the corporation in accepting, subscribing for, or agreeing to take stock, and not one between individuals in the purchase of stock in open market.

A purchaser of stock assessable upon its face, or by the charter or by-laws of the corporation and payable by instalments, is liable for the amount remaining unpaid as if an original subscriber, and chargeable with notice of any such unpaid balances, whether purchased of the corporation or in open market.

The defendant having transferred all the stock subscribed for by him, except four hundred shares, prior to the date when the plaintiff's original cause of action against the corporation was contracted, is liable in this action only for the balance remaining unpaid upon those four hundred shares, and not upon the additional one thousand shares which he purchased in open market, and which were issued by the corporation as fully paid stock.

On report.

This was an action on the case, under R. S., c. 46, §§ 46 and 47, to recover from the defendant the amount of a judgment obtained against the Deer Isle Silver Mining Company, a corporation existing under the laws of this state, and in which the defendant was a subscriber and owner of stock not fully paid.

(Declaration.)

"In a plea of the case; for that the said plaintiff on the twenty-ninth day of May, A. D. 1886, by the consideration of the justices of the superior court of the county of Cumberland, at a term of said court begun at Portland, on the first Tuesday of May aforesaid, recovered judgment against the Deer Isle Silver Mining Company, a corporation established by law and having a place of business in said Portland, for the sum of five thousand six hundred thirty-four dollars and sixty-nine cents, debt or damage, and one hundred sixteen dollars and ten cents costs of suit as by the record thereof, now remaining in said court, appears, which said judgment is in full force, and not reversed, annulled or satisfied.

And the plaintiff avers that said judgment was rendered in an action of assumpsit on a contract of affreightment, made and entered into by the said Deer Isle Silver Mining Company and the plaintiff, on the eighteenth day of November, A. D. 1882, and performed by the plaintiff between that time and the third day of March, 1883.

And the plaintiff further avers, that at the organization of said Deer Isle Silver Mining Company on the sixteenth day of August, A. D. 1879, at said Portland, the defendant subscribed for or agreed to take stock in said corporation to the extent of two thousand two hundred and fifty shares of the par value of five dollars each, and the defendant never paid said company the par

value of said shares *bona fide* in cash nor in any other matter or thing at a *bona fide* and fair valuation thereof.

And the plaintiff further avers, that the said defendant continued a stockholder in said company from the time of its organization, as aforesaid, to the third day of March, A. D. 1883, and was a stockholder and owner of said unpaid stock, to wit, of fourteen hundred shares at the time the indebtedness was contracted, upon which said judgment was rendered.

And the plaintiff further avers, that at the time his proceedings to recover his judgment aforesaid, against said corporation, were commenced, to wit: on the twentieth day of October, A. D. 1883, the said defendant still remained the owner of said fourteen hundred shares of unpaid stock, or had remained the owner thereof up to a time within one year prior thereto, so that said proceedings were commenced during the defendant's ownership of said unpaid stock, or within one year after its transfer was recorded in the corporation books.

Whereby, and by virtue of the statutes in such cases made and provided, an action hath accrued to the plaintiff to have and recover of the defendant, and the defendant became liable and promised to pay the plaintiff the sum of five dollars a share for each of said fourteen hundred shares or so much thereof as may be required to pay that portion of said judgment of $5,750.79 with interest from said twenty-ninth day of May, A. D. 1886, as may remain unsatisfied and unpaid at the time of the rendition of judgment in this suit.

Yet the said defendant, though requested, etc.   *   *   *"

The case was reported to the full court, by agreement under R. S., c. 77, § 43, to render such judgment upon the competent and admissible testimony as the legal rights of the parties required.

The facts are sufficiently stated in the opinion.

*Spaulding and Buker, Holmes and Payson,* for plaintiff.

Defendant's statement that, though the books showed 1400 shares in his name when the debt was incurred, he did not own any shares, is not admissible;—the books being the only competent evidence. A transfer of stock is not valid, except as between

the parties thereto, until the same is so entered on the books of the corporation as to exhibit the names and residences of the parties, the number of the shares, and the date of their transfer. R. S., c. 46, § 12; *Fiske* v. *Carr*, 20 Maine, 301, 305; *Fowler* v. *Ludwig*, 34 Id. 455; *Dane* v. *Young*, 61 Id. 160.

Statutory rule and estoppel: Lowell, Transfer of Stock, § 191; Cook, Stock and Stockholders, § 262; Morawetz, Corp. § 170; *Johnson* v. *Underhill*, 52 N. Y. 203. To the defense that defendant is not liable on the 1000 shares bought in open market, we say, he was one of the original members, and so continued. He knew the company was not paid the par value for stock issued. He purchased with knowledge of all the facts.

A purchaser of shares succeeds to all rights and liabilities of the original holder. *Upton* v. *Hansbrough*, 3 Biss. 428; *Seymour* v. *Sturges*, 26 N. Y. 134; *Sagory* v. *Dubois*, 3 Sandf. Ch. 466; *H. & N. H. R. R. Co.* v. *Boorman*, 12 Conn. 530; *Armstrong* v. *Wheeler*, 9 Cow. 88; *Ward* v. *Griswoldville Manf. Co.*, 16 Conn. 593; *Mann* v. *Cooke*, 20 Conn. 178.

It is only when a person, who is a purchaser of stock issued as fully paid, is without notice that it was not in fact fully paid, that he cannot be assessed for the unpaid portion of the shares for the benefit of creditors. *Waterhouse* v. *Jamieson*, L. R. 2 Sc. Ap. 29; *Guest* v. *Worcester, etc., R. Co.*, L. R. 4 C. P. 9; *Spargo's Case*, L. R. 8 Ch. 410; *Nicholl's Case*, 26 W. R. 334; *Canal Co.* v. *Sansom*, 1 Binn. 70; *Palmer* v. *Ridge Mining Co.*, 34 Pa. St. 288; *Franklin Oil Co.* v. *McCleary*, 13 P. F. Smith, 317; *Franklin Glass Co.* v. *Alexander*, 2 N. H. 380; *Seymour* v. *Sturges*, 26 N. Y. 134; *Jay Bridge Corp.* v. *Woodman*, 31 Maine, 573.

This last case was before enactment of present statutes as was *K. & P. R. R. Co.* v. *Kendall*, 31 Maine, 470.

R. S., c. 46, §§ 45, 46 and 47 were first enacted in 1871, c. 205. *Foreman* v. *Bigelow*, 4 Cliff. 508; Cook, Stockholders, § 257; *Henkle* v. *Salem Mfg. Co.*, 39 Ohio St. 547.

*W. L. Putnam, G. C. Wing*, with him, for defendant.

The associates were justified in placing the value they did on their property. The mine would yield thirty tons of ore daily, a profit of $100 per day, taking the lowest bids, above cost of

operating. Assays made in large numbers by different persons ran thirty to forty dollars per ton. Sales offer or lowest bid was from six to twelve dollars,—there being no reduction works here for treating refractory ores. It was regarded as a valuable and particularly good property. Capital stock as fixed, was the result of information obtained relative to the value of the property. In a legal sense, the value actually existed, and subsequent failure no evidence of want of good faith in thus fixing the valuation. There was no need of imaginary valuation. They believed the ore was of value shown by assays; mine would pay large dividends upon capital stock as fixed, and capable of permanent operation.

Sales of stock for less than par, not conclusive as to value put upon it. Contributions of shares for working capital, made what was retained more valuable. Stock ledger shows defendant had in Nov. 1882 only 400 shares of stock issued to him by the company. But they had been sold previously and then stood only in his name as custodian. *Eaton* v. *Tel. Co.*, 68 Maine, 63, 68.

Liability of stockholder. R. S., c. 46, § 45, does not require payment should be made in property at its proper value, nor its market value. It only requires "fair valuation,"—not true value,—a fair appraisal or estimate made in good faith.

Property at its value: *Schenck* v. *Andrews*, 57 N. Y. pp. 133, 142; *Lake Superior Iron Co.* v. *Drexel*, 90 N. Y. p. 87; *Coit* v. *Gold Co.*, 14 Fed. Rep. pp. 15, 18; Cook, Stock and Stockholders, § 34, citing *Boynton* v. *Andrews*, 63 N. Y. 93, 94. Sales of treasury stock illustrate the market value only, which is not what the statute calls for. The twenty club shares of 2250 each were reduced by one fifth (450) for treasury purposes. Hence only 1800 shares were issued to defendant. Company realized on this treasury stock from forty-five to eighty-six cents per share. Defendant not owner of these 450 shares when plaintiff's debt was contracted. A transfer of them had been accomplished. *Whitney* v. *Butler*, 118 U. S. p. 655. Parties receiving this from the company became liable by substitution for the defendant. *Burke* v. *Smith*, 16 Wall. 390, 395. Plaintiff makes up the 1400 shares, alleged in his writ, by adding to the 400 issued to defend-

ant by the company, the 1000 shares he bought in the market. These 1000 shares did not come either directly or indirectly from the corporation to the defendant,—hence he was not a person who had "subscribed for or agreed to take stock" in the corporation. These words limit the remedy to persons dealing with the corporation itself. Defendant not liable thereon. Cases cited by plaintiff to this point rest upon different and peculiar statute provisions.

Plaintiff's declaration does not set out any liability of defendant for any stock,—except what he took originally, as unpaid stock,—hence, there can be no recovery for stock purchased on the open market, or any stock not specifically set out in the declaration.

*Mr. Spaulding,* in reply.

FOSTER, J. This case comes before the court on report. The plaintiff having recovered judgment against the Deer Isle Silver Mining Company for $5,634.69 debt, and $116.10 costs of suit, claims the right to enforce his judgment against this defendant as a stockholder of the corporation by force of R. S., c. 46, §§ 46, 47.

The liability sought to be enforced is a statutory one; and in order to prevail the plaintiff must bring his case within the statute by proving that he has a lawful and *bona fide* judgment against the corporation "based upon a claim in tort or contract, or for any penalty" recovered within two years next prior to this action,—that the defendant subscribed for or agreed to take stock in the corporation, and has not paid for the same as defined in § 45,—that the cause of action, upon which his judgment against the corporation was founded, was contracted during the defendant's ownership of such unpaid stock,—and that the proceedings to obtain this judgment against the corporation were commenced during the defendant's ownership of such unpaid stock, or within one year after its transfer was recorded on the books of the corporation. *Grindle* v. *Stone,* 78 Maine, 176.

That there was a valid judgment in favor of the plaintiff against the corporation, recovered within two years next prior to the commencement of this action, is not in controversy.

By the certificate of organization, it appears that the corporation was organized in August 1879, with what purported to be a paid up capital of $300,000, divided into shares of the par value of $5 each, and that this defendant subscribed for and agreed to take 2,250 shares. An examination of the evidence satisfies us that payment, for the stock thus subscribed, was not made in cash or in any matter or thing at a *bona fide* and fair valuation thereof within the purview of § 45.

It appears that the associates voted to purchase the mineral right on Dunham Point, Deer Isle, for the sum of $240,000, and to issue stock to the several owners for their respective shares.

It becomes material to ascertain how this capital was paid up; whether it was a payment in a "matter or thing at a *bona fide* and fair valuation thereof."

The case shows that twenty persons, of whom the defendant was one, joined together for the purpose of purchasing, opening and developing this mineral right, and paid the owner for three fourths of the property $5,000,—or at a valuation of $6,666.67 for the whole. It was this property alone for which the corporation paid $240,000 in its stock at par.

After the organization of the company the land was put in at $240,000, and the owners of three fourths ratably returned 12,000 shares amounting to $60,000 to the corporation as a working capital. Under that arrangement this defendant returned six hundred shares as his proportion, and received a certificate of 1650 shares of paid up stock. The total actual cost to these associates, including $2,500, expended in improving and developing the property, was not over $375 each, or a fraction less than twenty-three cents a share for 1650 shares each.

That the property was not actually worth the sum of $240,000, at the time it was purchased is too evident to require discussion. The price paid, as well as the acts of the purchasers immediately after the organization in voting to sell the capital stock of the company to the amount of $45,000, at fifty cents a share, or at one tenth its par value,—the sale of a considerable portion of the treasury stock within sixty days of the organization at that figure,—the fact that the whole $60,000 of treasury stock was

sold at prices ranging from fifty cents to one dollar and fifty cents a share,—and the very low figure at which many of the stockholders sold their stock,—is evidence from which we may well infer that the value of $240,000, placed upon this property by the corporation, was not a "*bona fide* and fair valuation thereof."

The payment of stock in anything but money will not be regarded as a payment except to the extent of the true value of the property or thing received in lieu of money. R. S., c. 46, § 45. Thomp. on Liability of Stockholders, §§ 127, 201. *Boynton* v. *Hatch*, 47 N. Y. 225; *Nathan* v. *Mohawk Ins. Co.*, 3 Ed. Ch. 215.

The cause of action against the corporation was contracted on the 18th day of November, 1882. On that day the defendant had standing in his name four hundred shares only of the original stock for which he had subscribed, the balance having been transferred by him before that date. He, also, at that time had one thousand shares purchased in the market from Richardson, Hill & Co., of Boston, on March 23, 1882.

The defendant claims that, if liable at all, he is liable only upon this four hundred shares of original stock.

This position we think is correct.

The individual liability of members for the debt of a corporation is a departure from the established rules of law, and is founded solely upon grounds of public policy, depending entirely upon express provisions of statute law. The defendant, if chargeable at all, is chargeable upon a statute liability, as having "subscribed for or agreed to take stock in said corporation," and who has "not paid for the same." The contract was not made with him, or on his account. There was no contract express or implied between him and the plaintiff. Such liability is "therefore to be construed strictly, and not extended beyond the limits to which it is plainly carried by such provisions of statute." *Gray* v. *Coffin*, 9 Cush. 192; *Erickson* v. *Nesmith*, 4 Allen, 233, 235; *Knowlton* v. *Ackley*, 8 Cush. 93, 96.

As early as 1836, the legislature of this state saw fit to provide a remedy in favor of creditors of corporations, whereby the stock-

holders of all corporations were made liable individually for the corporate debts to the amount of their several shares. The history of the numerous and somewhat complicated enactments upon this branch of the law may be found in an opinion by TENNEY, C. J., in *Milliken* v. *Whitehouse*, 49 Maine, 527, and it is unnecessary to enter upon any extended review of the legislation on this subject here. It is sufficient to say that, up to 1871, the liability existing by general statute (R. S., 1871, c. 46, §§ 24, 26,) had been against the "stockholders," to the amount of their stock, in case of deficiency of attachable corporate property. But, by the act of 1871, c. 205, the statute in relation to the liability of stockholders in corporations was modified, and the word "stockholders" which had existed in previous statutes was omitted, and the remedy therein provided now exists only against persons "who have subscribed for or agreed to take stock in said corporation, and have not paid for the same," etc.

Referring to this act, APPLETON, C. J., in *Poor* v. *Willoughby*, 64 Maine, 379, 383, says: "The language of the act of 1871, c. 205, is clear and explicit. No room is left for any doubt as to its meaning. It was intended to have effect according to its terms. The past liability of stockholders had been fixed by previous legislation. This act was to fix their liability in future. So far as it modifies, changes, restricts or limits the then existent liability of stockholders, it must be regarded as a repeal of any law, which is thus modified, changed, restricted or limited by its provisions."

The defendant having sold and transferred all the original stock for which he had subscribed, except the four hundred shares, at the time this cause of action was contracted, can not be held upon the one thousand shares which he had purchased in the market. They were not shares he had "subscribed for or agreed to take" within the meaning of the statute. *Thames Tunnel Co.* v. *Shelden*, 6 B. & C. 341 (13 E. C. L. 194.) A fair inference to be drawn from the language of the statute is that of a transaction or contract with the corporation in accepting, subscribing for or agreeing to take stock, and not one between individuals in the purchase of stock in open market. Had the legislature intended

to make the remedy as broad as that contended for by the plaintiff, and thus render the defendant liable as a "stockholder" upon all stock held or owned by him, regardless of the manner in which he may have obtained it, it would have been an easy matter to have so expressed its meaning. Not having done so, it is not the province of the court to extend the remedy beyond the express provisions of positive enactment, especially in cases where the statute is to be construed strictly.

But it is claimed, on the part of the plaintiff, that inasmuch as the defendant was a stockholder in the corporation and knew the circumstances under which the stock was originally issued by the corporation, he was a purchaser with notice, and therefore liable on the thousand shares purchased in the market as well as on the four hundred shares of original stock.

We do not think this doctrine can properly be extended to the facts existing in this case. The authorities relied on in support of this proposition will be found to differ essentially from the case at bar, and relate to cases influenced by some peculiar statute provision differing essentially from that of our own state, or to cases where the certificates for stock were assessable upon their face or by the charter or by-laws of the company, and payable by instalments. In such case the stock, either upon its face, or by the charter or by-laws being liable to assessments, and transferred while the company is solvent, the transferee is substituted for the original subscriber or holder of the stock as to the rights of the company in demanding and collecting assessments. *Upton* v. *Tribilcock*, 91 U. S. 45; *Pullman* v. *Upton*, 96 U. S. 328; Angell and Ames on Corp. § 534.

The same was true in *Seymour* v. *Sturges*, 26 N. Y. 134, where the stock was assessable on its face, or by the by-laws of the corporation; and in *Hartford & New Haven R. R. Co.* v. *Boorman*, 12 Conn. 530, and *Ward* v. *Griswoldville Mfg. Co.*, 16 Conn. 593, the transferee voluntarily assumed the liabilities of the original stock. So in *Mann* v. *Cooke*, 20 Conn. 178, the defendant dealt directly with the corporation, the action being brought by a receiver upon a subscription which was special in its terms, and the case turned partially upon the construction and effect of a statute of the state of New York.

Cook on Stock and Stockholders, § 257, lays down no affirmative rule, the discussion there relating to cases where the corporation itself had a right to enforce calls or assessments on the stockholder, notwithstanding this did not always appear on the face of the certificates.

In the case at bar, the stock was issued by the corporation itself as fully paid stock, and the corporation had no right of assessment or future calls upon the stockholders, and no right of action existed in favor of the corporation against any stockholder for assessments or calls. *Scoville* v. *Thayer*, 105 U. S. 143, 153, 154 ; Cook on Stock and Stockholders, § 38. Whatever, therefore, may be the rule of law governing cases where the stock is assessable on its face, as in *Upton* v. *Tribilcock*, *supra*, and where in such cases, the transferee with notice is personally liable for the unpaid part-value of the stock, it has no application to the case before us, where fully paid stock was issued for property, though the property was put in at an overvaluation. There was no promise to the corporation to pay any deficiency, either express or implied. No obligation could, therefore, be transferred by novation from the original holder of the stock to the transferee.

The defendant being liable on the four hundred shares is liable only for so much as remains unpaid thereon. That would be the difference between the par value of $5, and the amount which the evidence shows he has paid, namely, twenty-three cents per share, amounting to $1,908.

*Judgment for plaintiff for $1,908, with*
*interest thereon from date of writ.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.