I am, therefore, of the opinion that the judgment should be affirmed, with costs.

All concur with Parker, J., except Haight, J., dissenting, and Follett, Ch. J., not sitting.

Judgment reversed.

The National Tube Works Company, Respondent, *v.* William J. Gilfillan, Appellant.

To establish a cause of action under the provision of the General Manufacturing Act (§ 10, chap. 40, Laws of 1848), making the stockholders of a company organized under it individually liable to the creditors of the company, to the amount of their stock, for all its debts, until the whole amount of the capital stock has been paid in, all that is required is to show that a valid debt was contracted before the capital stock was paid in, either in cash or in property honestly regarded as a fair equivalent to cash.

The liability covers "all debts and contracts made by said company," irrespective of the circumstances under which they were made. There is no exemption from liability, because credit was imprudently given by the creditor, or because he gave credit upon the supposition that the property of the corporation was sufficient to pay its debts.

By proof that the stock of the company has been issued as full-paid stock which has not been fully paid, a legal fraud is established; it is not necessary to show otherwise an actual fraudulent intent.

So, also, if it be shown that the stock was issued in payment for property, with knowledge on the part of its trustees that the value of the property was much less than the amount of the stock, no other fraudulent intent than that which is evidenced by the action of the trustees need be shown to authorize a recovery.

Reported below, 46 Hun, 248.

(Argued December 16, 1890; decided January 22, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 9, 1887, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

Action by a judgment creditor of the Brooklyn Marine Power Company, a corporation organized under chapter 40 of the Laws of 1848, against the defendant as a stockholder of said company, to recover a debt pursuant to section 10 of said act, upon the ground that the capital stock had not been paid either in cash or in property fairly worth the par value of the stock issued.

While the answer put at issue all the allegations of the complaint, which was in the usual form in such actions, upon the trial there was no question as to the right of the plaintiff to maintain the action, provided there had been a violation of said section.

Further facts are stated in the opinion.

*Charles H. Luscomb* for appellant. The court erred in charging that it is not necessary for plaintiff to prove that the trustees of the Brooklyn Marine Power Company have been guilty of a fraudulent intent to entitle the plaintiff to recover. (*Douglass* v. *Ireland,* 73 N. Y. 102; *Dodge* v. *Havemeyer,* 4 N. Y. S. R. 561; *Schenck* v. *Andrews,* 57 N. Y. 133.) Evidence of the amount realized at the sheriff's sale was improper. (*Schenck* v. *Andrews,* 57 N. Y. 150, 151.) Defendant sought to explain the transaction of the distribution of stock after its issue, and the intention of the parties in reserving 200 shares for the benefit of the company. (*Gamble* v. *Q. C. W. Co.,* 23 N. Y. S. R. 409; *Douglass* v. *Ireland,* 73 N. Y. 105; *L. S. I. Co.* v. *Drexel,* 90 id. 93.) The court erred in denying the motion to dismiss. (*Douglass* v. *Ireland,* 73 N. Y. 104; *L. S. I. Co.* v. *Drexel,* 90 id. 93; *Schenck* v. *Andrews,* 57 id. 133; *Dodge* v. *Havemeyer,* 4 N. Y. S. R. 561.) The denial of the motion to direct a verdict for the defendant and the motion for a new trial was error. (*Chase* v. *Lord,* 77 N. Y. 6; *Bruce* v. *Driggs,* 26 How. Pr. 71; *L. S. I. Co.* v. *Drexel,* 90 N. Y. 93; *Boynton* v. *Andrews,* 63 id. 95; *Schenck* v. *Andrews,* 57 id. 133.)

*Alfred Jaretzki* for respondent. All that it was necessary to prove in order to establish the defendant's liability as a

stockholder was : (1) That the stock issued exceeded in amount the value of the property in exchange for which it was issued, and (2) that the trustees deliberately and with knowledge of the real value of the property overvalued it and paid in stock for it an amount which they knew was in excess of its actual value. (*Douglass* v. *Ireland*, 73 N. Y. 103 ; *Boynton* v. *Andrews*, 43 id. 95 ; *Thurston* v. *Duffy*, 38 Hun, 329 ; *L. S. I. Co.* v. *Drexel*, 90 N. Y. 94; *Huntington* v. *Attrill*, 118 id. 365, 382.) The capital stock of the company was $300,000. It was issued for the five inventions of Mr. Bliven's, which are described in the trust deed. The question whether these five inventions were worth $300,000 was eminently a question for the jury. (*L. S. I. Co.* v. *Drexel*, 90 N. Y. 94.) The trustees of the company, and among them the defendant, deliberately, and with knowledge of the real value of the property, overvalued it, and paid in stock for it an amount which they knew was in excess of its actual value. This was a fraud and a palpable attempt to evade the statute. (*Douglass* v. *Ireland*, 73 N. Y. 103 ; *Huntington* v. *Attrill*, 115 id. 374 ; *Thurston* v. *Duffy*, 38 Hun, 329 ; *Blake* v. *Griswold*, 103 N. Y. 435.) The entire capital stock of the Brooklyn Marine Power Company had been issued for inventions which had never been patented. (*Gillette* v. *Bate*, 10 Abb. [N. C.] 88 ; *Tasker* v. *Wallace*, 6 Daly, 364.) Mr. Tower and Mr. Bogert were both eminently qualified to testify as to the merits and the commercial value of Mr. Bliven's inventions. (*Blake* v. *Griswold*, 103 N. Y. 436, 437.) The court had power to submit a special question to the jury for a special verdict. (Code Civ. Pro. § 1187.) One of plaintiff's witnesses was permitted to testify, under defendant's objection, the amount realized at the sheriff's sale of the property of the Brooklyn Marine Power Company. The sale was made under execution issued upon a judgment obtained by the defendant against the company. The testimony was objected to as immaterial. No error was committed in the admission of the testimony. (*Bach* v. *Levy*, 101 N. Y. 511 ; *Muller* v. *Eno*, 14 id. 597.)

Vann, J.   The substantial issue in this action was whether the property procured in exchange for stock was purchased at an over-valuation, not through error of judgment, but in bad faith and to evade the statute.   (*Douglass* v. *Ireland,* 73 N. Y. 100, 104.)

The trial judge instructed the jury that if they found " that the stock issued exceeded in amount the value of the property taken in exchange for it and for which it was issued, and that the trustees deliberately and with knowledge of the real value of  the property over-valued it and paid in stock for it an amount which they knew was in excess of its actual value, they must find for the plaintiff.   If the jury do not find this to be the fact, then they will find for the defendant."

The jury found a general verdict for the plaintiff, and, as a special verdict, that the  property purchased at $300,000  was really worth but $75,000.

The evidence in support of  the verdict is sufficient if not overwhelming.

The company was organized September 18, 1884, with a capital stock of $300,000, divided into 600 shares of $500 each.   Within less than a year thereafter, it was hopelessly insolvent, with all its property levied upon under an execution issued on a judgment recovered by the defendant, its president and a trustee from the outset.   None of the stock was paid for in cash or otherwise than by the transfer of a lot of unpatented inventions of one Bliven.   Two corporations had been previously organized, with the  defendant as a trustee in each, to handle these inventions, one of which seems to have  been merely a  corporation on paper that " had no  existence in fact to amount to anything," while the  other was " a  disastrous speculation."

The inventions were purchased by the corporation, whose transactions are directly involved in  this action, substantially in the following manner, viz. :  Bliven assigned them to the defendant, who, as trustee, transferred them to the company in consideration of  the entire capital stock, to be held by him in trust as follows, to wit:  200 shares for the benefit of the

company itself; 100 shares, par value $50,000, for the defendant — (in payment of a debt of $15,000 owing him by Bliven); 10 shares, par value $5,000, for one Baxter (in payment of an old debt of Bliven to him of $2,500); 27 shares apparently given away to qualify persons as trustees and to induce them to act; the remainder to Bliven or for his benefit.

According to the evidence, the jury made a liberal estimate of the real value of the inventions when they found that they were worth $75,000   The good faith of the trustees, including the defendant, as one of the most active in the transaction of this business, may be inferred from the foregoing facts. If they honestly considered the inventions worth $300,000, why was one-third of the avails, $100,000 in stock, donated to the company by Bliven? Why did the defendant accept of $50,000 in stock in payment of a debt of $15,000? Why was $5,000 given to Dexter to pay $2,500? Why was $13,500 in stock given to persons to induce them to become trustees? Would $300,000 in money have been disposed of in this way? The arrangement to thus dispose of the stock was made before the purchase and became a part of it. The facts were all known to the trustees, including the defendant. They were apparently intelligent men, the defendant being a physician. Although they testified that they considered the inventions worth $300,000 or more, the surrounding circumstances permitted the jury to find, as the General Term said, that they "were not only worth less than the price agreed to be paid for them, but it was so understood by the defendant and the other parties to the transactions." From these and other significant facts, not recited, it is evident that a case was presented for the consideration of the jury, and that the motions to dismiss were properly denied.

The merits are with the plaintiff, and when that is the case the exceptions should be overruled, unless a material and manifest error of law has been committed.

The defendant excepted to the following instruction to the jury made at the request of the plaintiff, viz.: "It is not necessary for plaintiff to prove that the trustees of the Brook-

lyn Marine Power Company have been guilty of a fraudulent intent to entitle the plaintiff to recover." We do not think that the exception was well taken, because the jury is presumed to comprehend and act upon the charge as a whole, and hence to have understood that the "fraudulent intent" referred to, meant an actual, furtive design to perpetrate a fraud, for they had already been told that "the fraud is consummated by the issue of stock as full-paid stock  \*  \*  \*  which has not been fully paid  \*  \*  \*  and it does not depend upon any fraudulent intent other than that which is evidenced by the act of knowingly issuing stock for property to an amount in excess of its value. All that is necessary to establish *legal fraud* \*  \*  \*  is proved in two facts," etc., etc. The reference was to actual fraud as contrasted with what was termed legal fraud.

The defendant also excepted to the refusal of the court to charge, at his request, that "if the plaintiff sold the goods to the corporation with full knowledge of what the inventions and improvements owned by the corporation were and relying upon the merits of the inventions, gave the corporation credit, defendant is entitled to judgment." This exception is without merit, because the knowledge of the plaintiff and the facts which induced it to sell its goods on credit were wholly immaterial. Within the limitations of the statute the stockholders are liable for "all debts and contracts made by such company," irrespective of the circumstances under which they were made. (L. 1848, ch. 40, § 10 ) There is no exemption from liability because credit was imprudently given by the creditor, or because he supposed that the property of the corporation was sufficient to pay its debts. All that the statute requires to make a stockholder liable is that a valid debt shall be contracted under the circumstances therein mentioned and before the capital stock has been paid in, either in cash, or in property honestly regarded as a fair equivalent to cash.

The object of the statute in requiring a certificate to be filed is to inform the public so that they can transact business with the corporation upon the assurance, either that the capital stock has all been paid in, or that the stockholders are severally

liable for an amount equal to the stock held by them respectively. If, therefore, the plaintiff when it parted with its goods knew the facts as they then existed, it knew no more than the statute contemplates that all persons, who deal with manufacturing corporations, shall know.

We have examined the other exceptions taken in behalf of the defendant, but find nothing that requires a reversal of the judgment, which should, therefore, be affirmed.

All concur.

Judgment affirmed.