ALLEN *et al. v.* GRANT, trustee, *et al.*

1. The trustee in bankruptcy of an insolvent corporation may sue for the recovery of an unpaid subscription for the capital stock, not only where the subscription is payable in cash, but also where it is expressly made payable in specifics fraudulently overvalued.
2. A subscription to stock, made payable in specifics worth not more than ten per cent. of the face of the shares, is a legal fraud upon subsequent creditors of the corporation, who have the right to look to the authorized capital stock as a trust fund for the payment of their debts.
3. A transferee who takes such shares with knowledge that they have been improperly issued as fully paid up becomes liable for the unpaid subscription.
4. The order of the bankrupt court directing the trustee to bring suit for the recovery of the unpaid subscriptions was sufficiently in the nature of a call or assessment to perfect the cause of action, and to authorize the maintenance of the suit against the stockholders as for unpaid subscription.
5. The demurrer to the petition was properly overruled.

Argued February 8,—Decided March 27, 1905.

Equitable petition. Before Judge Lumpkin. Fulton superior court. June 14, 1904.

On June 26, 1903, Peter G. Grant was appointed trustee in bankruptcy for the Allen-Miles Company.    On February 13, 1904, he was granted permission to institute suit to enforce stockholders' liability, and thereupon filed an equitable petition against E. O. Miles and C. L. Allen, residents of Fulton county, and Bona Allen, Bona Allen Jr., and John Q. Allen, residents of Gwinnett county.    The charter is not attached as an exhibit, but from the petition it appears that the defendants were the incorporators of the Allen-Miles Company, which was chartered by the superior court of Fulton county on October 16, 1902; that on October 28, 1902, they met, accepted the charter, and opened books, and the following subscriptions were made:    Bona Allen, $60,000; Bona Allen Jr., 35,000; John Q. Allen, 30,000; E. O. Miles, 109,900; C. L. Allen, 164,900.    It is alleged, that the subscriptions by Bona Allen, Bona Allen Jr., and J. Q. Allen were in the ordinary form; that nothing was paid thereon by either of the subscribers; that while the trustee found that certain notes had been given by them, the defendants claimed that they did not represent any liability for the stock subscribed, but they had been left with the company as accommodation paper.    It is alleged that by the contract of subscription Miles agreed to take and pay for 1099 shares, "and in payment of said stock he agreed to transfer the property of Edward O. Miles & Company, subject to certain debts of said company;" that this property was not worth $109,900; that it was not worth exceeding ten per cent. of said sum, and that the transfer of said property in payment of $109,900 of its capital stock was a fraud on the Allen-Miles Company and its creditors; that each of the defendants knew the property taken in payment of the subscription was not worth more than ten per cent. of the face of the stock; and that the property, being grossly overvalued, was not a payment of the subscription, and Miles became liable to pay the balance thereof to the creditors in the event of the company's insolvency.    Similar allegations were made in reference to the subscription by C. L. Allen for 1649 shares of stock, in payment of which he was to transfer the assets of C. L. Allen & Company.    It was alleged that these assets were not worth more than ten per cent. of the face of the stock subscribed, and that this was known by the other defendants, and by reason of the overvaluation C. L. Allen became liable to pay the full amount of his subscription in the event of insolvency.

The petition then alleges that after these subscriptions C. L. Allen was elected president, with a salary of $10,000; E. O. Miles was elected secretary, with a salary of $7,500, and they were also elected directors and put in complete charge of the business; that by reason of the representation that the company had a capital stock of $400,000 fully paid in, it acquired large credit, borrowed large sums of money, and bought large quantities of supplies on credit from various persons; that on June 6, 1903, Bona Allen agreed with E. O. Miles and C. L. Allen to take charge of the corporation and pay its debts and continue it as a going concern, if E. O. Miles and C. L. Allen would transfer to him certain shares of the stock standing in their names on the books, which had been subscribed for by them as aforesaid; that accordingly, E. O. Miles transferred to Bona Allen Sr. 999 shares, and C. L. Allen transferred 1,648 shares, and certificates for $264,700 were thereupon issued to Bona Allen Sr., who knew at the time that not more than ten per cent. of the value of the certificates had been paid in by those making the original subscription; and by reason thereof said Bona Allen Sr., became bound to pay the unpaid balance due on the stock so transferred to him by E. O. Miles and C. L. Allen, amounting to $238,230; that on demand therefor, Bona Allen has refused to pay anything thereon, and denies all liability; that Bona Allen after the transfer assumed control of the stock, and that on June 26, 1903, the company was adjudicated a bankrupt; that at the time of the adjudication the debts of the company amounted to more than $380,000, and, exclusive of the unpaid subscriptions, its total assets amounted to less than one half of that sum, practically all of the assets having been paid in by the company's creditors, who, in addition, had in effect paid the salaries of E. O. Miles and C. L. Allen; that at the time of filing the present suit the claims of creditors of the company, filed with the referee, amounted to $257,400; that some of the defendants are solvent, and others are insolvent; that the property transferred by E. O. Miles and C. L. Allen in payment of their original subscriptions is all that has been paid in by any of the subscribers; that the others have paid nothing whatever; that at the time of the filing of the suit C. L. Allen held one share of stock, E. O. Miles held 101 shares, Bona Allen Jr. 300 shares, J. Q. Allen 240 shares, and Bona Allen Sr. —— shares; that owing to the inequality of

the payments made, and the fact that some of the defendants are solvent and others insolvent, and in order to ascertain the percentage necessary to be paid in by each stockholder, and to avoid a multiplicity of suits and to save the bankrupt estate the expense incident thereto, it is necessary that the controversy be determined in one suit, and in a court of equity. The petition therefore prays for an accounting to determine the indebtedness of the corporation and the amount necessary to be paid by each of the defendants in order to discharge the debts of the corporation; for a judgment against Bona Allen Sr., Bona Allen Jr., and John Q. Allen on their original subscriptions; for a judgment against E. O. Miles and C. L. Allen for the stock remaining on the books in their names, less the ten per cent. credit thereon because of the transfer of the property referred to in the petition; and that judgment be rendered against Bona Allen Sr., for $264,700, on account of the stock transferred to him by E. O. Miles and C. L. Allen, less the ten per cent. paid thereon by the transfer of the property to the corporation when the subscription was made by Miles and Allen.

Not waiving the plea to the jurisdiction, Bona Allen Sr., Bona Allen Jr., and John Q. Allen demurred on the grounds, that the petition set out no cause of action against them; that there was a misjoinder of parties, and a misjoinder of actions; and that the petition was multifarious. Bona Allen Sr. specially demurred to so much of the petition as seeks to recover anything of him on account of the stock transferred by E. O. Miles and C. L. Allen, alleged to have been paid for by property which had been overvalued, for that said allegations set out no cause of action against Bona Allen Sr. on account of the alleged ownership of said shares. The court overruled the demurrer and the Allens excepted.

*Anderson & Anderson*, for plaintiffs in error.   Trustee in bankruptcy can not maintain the suit: Cook on Corp. 18, 19, 21, 38, 46, 208; 16 A. & E. Enc. L. 740, 721; 5 Cyc. 341, 342; 2 Thomp. Corp. §§ 1676, 2091, 2935, 2933, 2953, and cit.; 105 U. S. 143, 153; 129 U. S. 372; 119 U. S. 343; 146 U. S. 630; 15 L. R. A. 407; 70 Fed. 158; 58 Minn. 247; 75 Mo. 474; 10 Cyc. 656, 728, 732; 8 *Ga.* 468; 53 *Ga.* 502; 95 *Ga.* 505; 119 *Ga.* 994; 3 De G., J. & S. 367; 110 Ind. 417; 59 Me. 1; 46 N. J. Eq. 533.

*Rosser & Brandon, Abbott & Goree, Slaton & Phillips, King, Spalding & Little, and E. V. Carter,* contra. Trustee can bring the suit: 91 U. S. 65, 56, 45, 64; 95 U. S. 665; 96 U. S. 28; 102 U. S. 314; 81 *Ga.* 500; 106 *Ga.* 556; 7 Fed. 785; 105 U. S. 156; 119 *Ga.* 990; 10 Cyc. 382; 115 *Ga.* 145; 70 Pac. 286. Stockholder liable because of the overvaluation: 25 Am. St. R. 65; 23 Id. 417; 10 Cyc. 472; 42 L. R. A. 593–621; 52 L. R. A. 728; 56 L. R. A. 728; 73 N. W. 189, 160; 14 S. E. 36; 26 N. E. 538; 2 Thomp. Corp. 1665–1676; 144 U. S. 104; 146 U. S. 642. Transferee with notice liable: 110 *Ga.* 827; 96 U. S. 28; 10 Cyc. 483. Call sufficient: 150 U. S. 144; 83 *Ga.* 223. Rescission for fraud not necessary before suit: Mor. Corp. 589; 20 N. W. 764; 14 S. E. 36; 99 N. C. 501; 17 Wall. 620; 26 N. E. 538; 53 N. E. 1133; 92 Ala. 407. Trust fund: 10 Cyc. 460–477; 8 *Ga.* 486; 87 Am. St. 147; 40 *Ga.* 98; 76 *Ga.* 360. Petition not multifarious: Cook, Corp. 199, 204, 208.

LAMAR, J. (After stating the foregoing facts.) The plaintiffs in error insist that whatever might be the right of an individual creditor, the trustee in bankruptcy has no cause of action on a subscription which was expressly made payable in specifics, the value of which was known to the corporation when it accepted a conveyance of the property and issued the certificate. And this might be a complete defense in jurisdictions where, as in England, the contract of subscription is an entirety. There it is either good or it is bad. If void, there is no contract of subscription, and consequently no liability thereon. If good, it is good according to its terms, and the company can not receive the subscription payable in specifics and afterwards, by itself, creditors, or liquidator, hold the subscriber for the difference between the value of the property and the face of the shares. But the American doctrine is that a subscriber must pay before he can be relieved from liability to the creditors of the corporation. There is, however, some difference in the method of determining what is payment where other than money is the medium. In those States which adopt the "true-value" rule, motive, intent, and good faith are disregarded. In order for a subscriber to relieve himself he must show that the property conveyed in satisfaction of the subscription was its equivalent in money, and was worth in dollars the face of the shares. In those States which adopt the "good-

faith" rule it is recognized that value is a matter about which men may honestly differ. In them it is therefore held, that if the parties fairly and in good faith value the property conveyed in payment of the subscription, the courts will not go behind their assessment. But under either rule there must be payment, and if it is not made the subscriber remains liable as for an unpaid subscription. This record does not call for a determination of the question as to whether in Georgia the liability of a subscriber is to be measured by the "true-value" rule or the "good-faith" rule. For here the defendants by their demurrer admit that, when the subscription was made and the certificates were issued, both parties to the transaction knew that the property was worth not more than ten per cent. of the stock. Under no rule would this be considered payment, and the trustee in bankruptcy could maintain a suit, whether it be treated as based on the contract or arising out of a fraudulent valuation.

The cause of action is for the unpaid subscription. To the creditors it makes no difference whether the failure to pay was the result of an express contract or the result of fraud. If there could be difference in the rights of the trustee, it would seem that he ought to be more bound by a contract than by fraud. And if the contract to receive less in money than the face of the stock will not defeat his right to recover, neither should it be defeated by a fraudulent agreement to receive less in property. Compare 1 Cook on Stockholders, § 47, with Elyton Land Co. v. Birmingham Co., 92 Ala. 407, 25 Am. St. Rep. 79. For it has long been held in this State that capital stock is a trust fund for the payment of debts. *Hightower* v. *Thornton*, 8 *Ga.* 486. The liability on the part of the stockholder to pay his subscription in money or in money's worth arises out of his relation to that trust fund, and is imposed by law. The obligation is in part for the benefit of the company's creditors. Neither the corporation nor the subscriber, nor the two together, can defeat the creditor's rights. They can not do so by an express contract to issue non-assessable fully paid-up stock for any number of dollars less than the amount of the subscription. Neither can they bring about such a result by agreeing to receive property whose value is less than the amount of the subscription. Whatever may be the rights and remedies between the parties, when the interests of creditors are

concerned the law looks only to so much of the contract as made the subscription, and disregards every stipulation therein by which anything less can be received as a discharge.

This liability can be enforced by the trustee in bankruptcy. For while he represents the corporation in a sense he also represents the creditors. Inasmuch as all the subscribers who have not paid in full can be joined as defendants in one suit (*Dalton Co.* v. *McDaniel,* 56 *Ga.* 195 (1) ; *Moore* v. *Ripley,* 106 *Ga.* 556 (1); 1 Cook, Corp. § 206), it is manifestly to their interest, to that of the creditors, and to that of the estate, that the trustee should be permitted to be the plaintiff in that action.    It avoids a multiplicity of suits.  Civil Code, § 3989 ; compare §§ 4842, 4846.  It permits the court to pass upon the rights of the several creditors, and to determine whether any are precluded from the right to share in the fund when realized.    It also enables the court in one action to have an accounting, to determine the varying rights of each creditor, whether any of the subscribers are insolvent, to mold a decree accordingly, and to do complete equity in one proceeding. That the trustee in bankruptcy is the proper party plaintiff to maintain such a suit against the stockholders who made their subscriptions payable in specifics was in terms decided in *Falco* v. *Kaupisch Co.* (Or.), 70 Pac. 286.  The same principle was in effect recognized in *Commercial Bank* v. *Warthen,* 119 *Ga.* 990, even though it does not appear that the subscription was payable in other than cash.

When the stock was transferred to the defendant Bona Allen, with full knowledge on his part that it had been issued in consideration of specific property thus overvalued, he acquired the rights, and became subject to the liabilities, of a stockholder, *Fouché* v. *Merchants Bank,* 110 *Ga.* 836.    There was a demand by the trustee and a refusal to pay by the defendants.    10 Cyc. 496 (111).  If this was not sufficient the petition presented to the bankrupt court by the trustee set forth the debts and assets of the corporation, the amount of the capital stock and the sums paid in on account thereof, the amount due on account of subscriptions, the necessity of proceeding to collect the unpaid subscriptions; and prayed for an order authorizing him to institute such proceedings as might be necessary to recover the sums due.    The order of the bankrupt court permitting the trustee to sue was a sufficient

judicial call or assessment to entitle him to institute and maintain the present proceeding.    1 Cook, Corp. § 207.

*Judgment affirmed.    All the Justices concur.*