[L. A. No. 2983.   In Bank.—June 14, 1913.]

## R. H. HERRON COMPANY (a Corporation), Appellant, v. W. P. SHAW et al., Respondents.

CORPORATION—LIABILITY OF STOCKHOLDERS TO CREDITORS FOR UNPAID SUBSCRIPTION—REVERSAL OF JUDGMENT PENDING ACTION BY JUDGMENT CREDITOR.—In an action by a judgment creditor of a corporation to enforce the stockholder's liability for unpaid subscriptions to their stock, in which the complaint is in three counts, each based upon a different judgment recovered by the plaintiff against the corporation, the plaintiff's admitted standing as a creditor upon two of such judgments entitles him to prosecute an appeal in the action, notwithstanding the other judgment was reversed pending the action.

ID.—ISSUE OF STOCK NOT FULLY PAID—CREDITOR OF INSOLVENT CORPORATION MAY ENFORCE PAYMENT OF BALANCE OF SUBSCRIPTION.— Where the stock of a corporation is issued without being fully paid up, the amount remaining unpaid is, so far as its creditors are concerned, deemed to be money due to the corporation from the stockholders. Such creditor, if the corporation become insolvent, may apply, in equity, to have the fund so deemed to be due to the corporation collected and applied upon his debt.

ID.—STOCK ISSUED AS FULLY PAID WHEN NOT SO IN FACT—CREDITOR NOT ESTOPPED—SUBTERFUGE TO AVOID LIABILITY TO CREDITOR.— The fact that the stock is issued as fully paid up does not estop or bind the creditor, and in such a case, if it is not fully paid up, the creditor may prove the fact and recover enough of the portion that is unpaid to satisfy his debt. No subterfuge or device by which it is made to appear as fully paid up when it is not will enable the stockholder to avoid this liability.

ID.—EXCHANGE OF STOCK FOR PROPERTY KNOWN TO BE OVER-VALUED.— So far as concerns the rights of creditors to enforce the stockholder's liability for unpaid subscriptions on their stock, there is no essential difference between an exchange of full paid stock for property at a known over-valuation, and a sale of such stock for money at less than par value.

ID.—GOOD FAITH OF DIRECTORS IN MAKING EXCHANGE—PROPERTY SUSCEPTIBLE OF DEVELOPMENT SO AS TO ENHANCE VALUE.—The fact that the directors of the corporation, in issuing its stock in exchange for property at a known over-valuation, acted in good faith and honestly believed that the property could and would be developed so that its market value would eventually exceed the par value of the stock, does not relieve or excuse the stockholders to whom such

stock was issued, from liability to the creditors of the corporation for their unpaid subscriptions.

ID.—VALUE OF PROPERTY AT TIME OF EXCHANGE DETERMINES LIABILITY OF STOCKHOLDER.—It is the value of the property in the condition it was in at the time of the exchange, as known to the parties and as they honestly believed it to be, that determines such liability of the stockholder, to the corporate creditors, at least where there is no subsequent increase in value nor any intentional fraud.

ID.—APPLICATION OF RULE TO MINING CORPORATIONS.—The doctrine announced by the United States circuit court in *In re South Mountain Mining Co.*, 7 Sawy. 30, to the effect that the foregoing rules are not applicable to corporations engaged in mining, if it is to be followed by this court in cases to which it is properly applicable, should be followed only where it appears from the record that the company concerned was a mining corporation of the class described in that case, and that the property exchanged was of the class there referred to.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

O'Melveny, Stevens & Millikin, and Walter K. Tuller, for Appellant.

Davis & Rush, Mark H. Slosson, Leonard B. Slosson, and Williams, Goudge & Chandler, for Respondents.

SHAW, J.—This is an action against the several defendants, as stockholders of a corporation named Kern River Mining and Power Company to recover a separate judgment against each of them in a sum equal to the amount unpaid upon his subscription for the stock of said company held by him, not exceeding, however, the debt which it is alleged is due from said company to the plaintiff. The court below made its findings and thereupon rendered judgment for the defendants, from which plaintiff appeals.

The complaint is in three counts. Each count is based upon a judgment recovered by plaintiff against said Kern River Mining and Power Company. The first count is upon a judgment for $2,380, rendered by the superior court of Los Angeles County on September 16, 1910. Two of the defend-

ants in their answers aver that an appeal from said judgment is pending in the supreme court of California. Upon the hearing it was stipulated that upon said appeal said judgment had been reversed on the ground that no valid service of the summons had been made. We do not think this reversal can affect our decision on the present appeal. Plaintiff's standing as a creditor upon the other two judgments is admitted, and it is entitled, by virtue thereof, to contest the judgment below by this appeal. The question presented by the record affects all the debts alike. If a reversal of the case at bar is necessary the appellant may amend the first count or file a supplemental pleading relating thereto, as the facts may warrant and as he may be advised.

The case turns upon the question whether or not the stock issued to and held by the several defendants was fully paid up. The authorized capital stock of the Kern River Mining and Power Company was one million dollars, divided into one million shares of one dollar each. Of this, the defendants held in the aggregate 537,635 shares. The complaint alleges that they had paid thereon only ten cents per share. On this point the court found, in effect, that certain persons, not named, owned certain water-rights, mining claims, and mining machinery, that solely in consideration of the transfer thereof by said owners to said company it issued to said owners six hundred and ninety-five thousand of its shares as fully paid nonassessable stock, that nothing further has ever been paid for or on account of said shares, that the market value of said property did not then exceed sixty-nine thousand five hundred dollars, that the board of directors of said corporation did not then believe that the market value of said property was six hundred and ninety-five thousand dollars, but did believe that it exceeded sixty-nine thousand five hundred dollars and believed that the property purchased could be developed to a value in excess of six hundred and ninety-five thousand dollars, and that said directors "in issuing said stock for said property acted in good faith and in the honest belief that said property could and would be developed so that the said property would have a market value in excess of $695,000." The stock owned by the defendants is a part of the six hundred and ninety-five thousand shares above referred to.

Where the stock of a corporation is issued without being fully paid up, the amount remaining unpaid is, so far as its creditors are concerned, deemed to be money due to the corporation from the stockholders. Such creditor, if the corporation becomes insolvent, may apply, in equity, as plaintiff sought to do here, to have the fund so deemed to be due to the corporation collected and applied upon his debt. The fact that the stock is issued as fully paid up does not estop or bind the creditor, and in such a case, if it is not fully paid up, the creditor may prove the fact and recover enough of the portion that is unpaid to satisfy his debt. No subterfuge or device by which it is made to appear as fully paid up when it is not, will enable the stockholder to avoid this liability. Thus, in *Vermont M. Co.* v. *Declez Granite Co.*, 135 Cal. 579, [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1057], the par value of the stock was one hundred thousand dollars, and it had all been issued to the stockholders as fully paid stock on payment of only twenty thousand dollars. This was done without any intent to defraud creditors. The case holds that the balance of eighty thousand dollars not paid was a fund for the benefit of creditors, which they might collect from the stockholders if the corporation became insolven'. The court said: "The question concerns creditors only. As to them the corporation is presumed to have sought credit based upon its supposed capital of one hundred thousand dollars, actually paid in or due from its stockholders. Public policy requires that the fact whether a particular creditor did trust the corporation on that basis should not be inquired into. The constitution and laws require commercial corporations to have a capital stock, the amount of which shall be stated in the articles, and that this can be had of the corporation only for value." The language of the constitution referred to is that stock can be issued only for "money paid, labor done, or property actually received." (Art. XII, sec. 11.)

It is proper to add that in the case just cited it was not claimed that the creditors, at the time of giving credit, knew that the stock had been issued at a cash price less than the par value. The part of the quotation declaring that "public policy requires that the fact whether a particular creditor did trust the corporation on that basis (that the par value had been paid) should not be inquired into," was not necessary

to the decision of the case. The fact that par value had not been paid was admitted. The basis of the doctrine is that credit is given in reliance on the presumption that full par value has been received by the corporation for the stock it has issued as fully paid. We would not here say that this presumption is in all cases conclusive. Cases may arise in which the corporation, at the time of obtaining the credit, made full disclosure to the creditor and the credit has been given with full knowledge by the creditor of the difference between the par value of the stock and the value of the property received for it. If such facts are properly pleaded and proved by the stockholder, we do not mean to declare that it might not be a complete defense to a suit by the creditor to recover such difference. Nothing of the sort appears here, either in the pleadings or findings, and it is unnecessary to consider the question.

The Vermont Marble Company case establishes the rule in this state as to creditor's rights, where the stock is an original issue and is issued as paid up at a price substantially less than the par value, where the price is paid in money. Where it is issued in exchange for labor, services, or specific property, the rule, so far as other stockholders are concerned, seems to be that the transaction is conclusive unless it is fraudulent as to them in purpose or in effect. With regard to creditors we know of no decision in this state. In some jurisdictions, where the value of the property taken in exchange is less than the par value of the stock, it appears to be the rule that creditors can enforce their claims against stockholders to the extent of the difference between the par value of the stock and the actual market value of the property, the value being taken as of the time of the exchange, and the absence of fraud being regarded as immaterial. (*Van Cleave* v. *Berkey,* 143 Mo. 109, [42 L. R. A. 593, 44 S. W. 743] ; *Cole* v. *Adams,* 19 Tex. Civ. App. 512, [49 S. W. 1052] ; *Libby* v. *Tobey,* 82 Me. 404, [19 Atl. 904] ; *Wetherbee* v. *Baker,* 35 N. J. Eq. 501.) In other states if the exchange is made in good faith, both parties believing that the property is really worth as much as the par value of the stock taken in exchange for it, the transaction is valid as against the creditors; but if there is fraud, or bad faith, or if the property is taken at a valuation known or believed by the parties to be in excess of its real market value,

the creditors may impeach the transaction and obtain the benefit of the difference between the par value of the stock and the reasonable value of the property at the time of the exchange. Where there is no fraud or bad faith but the property is knowingly overvalued, it is intimated in some of the cases that the stockholders would be liable only for the difference between the actual value of the property as known to them and the par value of the stock. (*Douglass* v. *Ireland,* 73 N. Y. 100; *National Tube W. Co.* v. *Gilfillan,* 124 N. Y. 302, [26 N. E. 538]; *Clayton* v. *Ore Knobe etc. Co.,* 109 N. C. 389, [14 S. E. 36]; *Elyton Land Co.* v. *Birmingham W. & E. Co.,* 92 Ala. 407, [25 Am. St. Rep. 465, 12 L. R. A. 307, 9 South. 129]; *Sprague* v. *National Bank,* 172 Ill. 166, 64 Am. St. Rep. 17, 42 L. R. A. 606, 50 N. E. 19]; *Young* v. *Erie I. Co.,* 65 Mich. 122, [31 N. W. 814]; *Medler* v. *Albuquerque Hotel Co.,* 6 N. Mex. 345, [28 Pac. 551]; *Allen* v. *Grant,* 122 Ga. 557, [50 S. E. 494]; *Kelly* v. *Clark,* 21 Mont. 291, [69 Am. St. Rep. 668, 42 L. R. A. 621, 53 Pac. 959]; *Gilkie & Anson Co.* v. *Dawson Town & Gas Co.,* 46 Neb. 333, [64 N. W. 978, 1097]; *Osgood* v. *King,* 42 Iowa, 478.)

There are also cases where the fact of a known over-valuation was not established or conceded and the court in discussing the effect of evidence of mere over-valuation as proof of fraud, declares that if the real value is substantial the over-valuation is not conclusive proof of fraud and does not overthrow a finding that there was no fraud or fraudulent intent. These cases do not affect the rule to be applied where the parties were at the time aware of the over-valuation. Parties may honestly mistake the value of property and if they do so, proof at the trial that they were mistaken, without proof, direct or circumstantial, that it was not an innocent mistake, will not render the stockholders liable under the rule we are now considering.

There are other decisions in some of the states holding that a creditor cannot rely on the issued capital stock of a corporation as evidence of its solvency, but must inquire as to its assets the same as when he is giving credit to a natural person and, therefore, that an exchange of paid-up stock at less than par value for property does not make the stockholder liable for the difference, unless it is done to defraud creditors. We

think the case of *Vermont Marble Co.* v. *Declez Granite Co.*, 135 Cal. 579, [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1057], establishes the opposite rule in this state and hence we do not discuss those decisions.

On principle, we perceive no essential difference between an exchange of full paid stock for property at a known overvaluation and a sale of such stock for money at less than par value, such as was considered in *Vermont M. Co.* v. *Declez.* If, for example, the parties know or believe that certain property is actually worth only twenty thousand dollars, but nevertheless agree to exchange it for corporate stock of the par value of one hundred thousand dollars, to be issued and considered as fully paid up, in what respect is the transaction less injurious to creditors than in a case of sale of full paid stock of the par value of one hundred thousand dollars for twenty thousand dollars in lawful money? Manifestly they are equally injurious and on principle each should be equally susceptible to impeachment in a court of equity for the benefit of the creditors. This being so, it is decisive of the case at bar. The parties here believed that the property was worth less than six hundred and ninety-five thousand dollars, by which we understand a substantial amount less, yet they exchanged it for six hundred and ninety-five thousand shares of paid-up capital stock at one dollar a share. The numerous cases last cited hold that this is, as to the creditors, constructively fraudulent, that is, it is an evasion of the law which the law visits with the same consequences as if it were intentionally fraudulent.

The further fact found by the court that the directors acted in good faith and honestly believed that the property could and would be developed so that its market value would eventually exceed six hundred and ninety-five thousand dollars, does not relieve or excuse the stockholders from such liability. As appellant's counsel well says, to hold that it would have that effect would be to sanction an arrangement to "throw the risk of the venture from the shoulders of the stockholders to those of the creditors." It is the value of the property in the condition it is in at the time of the exchange, the value as known to the parties and as they honestly believe it to be, that determines the liability, at least where there is no subsequent increase in value nor any intentional fraud. The par-

ties may believe that the property will eventually rise to a value far above that at which it is exchanged, and they may willingly accept the hazard in view of the expected gain, but they have no right to demand that the creditor shall share the risk with them, in effect become their partner with no share in the profits, and lose his recourse on them if their speculation proves a bad one. The case cannot be distinguished in principle from *Vermont M. Co.* v. *Declez Granite Co.,* where stock of the par value of one hundred thousand dollars was sold for less than par in money. The parties may believe, and doubtless frequently do believe, that the money can be invested in property which can be developed so as to make it worth the par value of the stock. Whether the stock is invested in the property by direct exchange, or by first selling it for money and then buying the property from third persons therewith, the effect is the same and the same principle should control. The creditor is presumed to rely on the fact that the company has received, or will receive, full par value for the stock issued. He is not a partner with the stockholder, he cannot participate in the profits of their venture and he should not be required to assume their burden or hazard.

We have alluded to the rule that as to other stockholders the transaction cannot be impeached except for fraud or mistake. *Garretson* v. *Pacific C. Co.,* 146 Cal. 184, [79 Pac. 838], is an example of this class of cases. It is obvious that passages from the opinions in cases involving this rule are not applicable to suits by a creditor and are of no value in the decision of this case.

Respondent cites the decision of the United States Circuit Court in the South Mountain C. M. Co. case (7 Sawy. 30, [5 Fed. 403] ; 8 Sawy. 336, [14 Fed. 347]), to the effect that the rule as stated in *Vermont M. Co.* v. *Declez Granite Co.* does not apply to corporations engaged in mining. The South Mountain case is based on the assumed practice of mining companies to issue full paid stock in exchange for mining claims, wholly undeveloped and of a value unknown and prospective only, at an estimated value far above their actual or known value and fixed by mere guess as to their probable value when developed. This practice, it is said is so universal and so well known that no creditor can be supposed to have

been ignorant of it or to have given credit on the belief that the issued stock represented the actual or real value of the assets, and that creditors of such companies must be presumed to have looked to and relied upon the property of the company only, in giving it credit. In the Vermont Company case the court said: "We are not inclined to extend the doctrine of *In re South Mountain Min. Co.*, 7 Sawy. 30, [5 Fed. 403], to this case, even if we were prepared to indorse the principle there announced. This is not such a mining corporation as is there described." This remark is applicable here. The name of the company is Kern River Mining and Power Company. The property transferred by the stock is described as "certain water-rights, mining claims and mining machinery." There is nothing in the record to show whether the company is or was engaged in or intended to engage in mining for precious metals, or whether it was intending to engage in using water to develop power. If the rule of the South Mountain case is to be followed by this court in cases to which it is properly applicable, we think it should be done only where it appears from the record that the company concerned was a mining corporation of the class described in that case and that the property exchanged was of the kind there referred to.

We deem it proper to add that it is not expressly stated anywhere in the record that the defendants were parties to the exchange of the property for the stock mentioned, or that they were aware of the over-valuation when they bought the stock. The argument of both parties is made upon the theory that they either knew of the over-valuation or that they were chargeable to the same extent as if they did know. We have therefore not considered the rule applicable to an innocent purchaser of stock, or to a case where the directors of the corporation knew or believed that the property was worth less than the par value of the stock exchanged for it but the purchaser of the stock honestly believed that the values of the stock and of the property were equal.

The judgment is reversed.

Henshaw, J., Lorigan, J., Melvin, J., and Sloss, J., concurred.

Rehearing denied.