## *In re* SOUTH MOUNTAIN CONSOLIDATED MINING CO.

*(Circuit Court, D. California. November 8, 1882.)*

**1. MINING CORPORATIONS—STOCKHOLDERS.**

There being no *subscribed* stock, stockholders in *mining* corporations, organized under the laws of this state, are not liable, by contract or by operation of law, to pay to the corporation the nominal par value of their stock, even though such nominal value has not been paid in.

**2. SAME—PURCHASERS OF STOCK—LIABILITY.**

Purchasers of stock in such corporations are not, by contract or by operation of law, bound to pay to the corporation the nominal par value of their stock; their only liability is the constitutional and statutory personal liability for their proportion of the debts and liabilities of the corporation, and the liability of their stock to assessment by the corporation.

**3. SAME—ASSESSMENTS—LIABILITY OF STOCKHOLDER.**

The power to levy assessments by the corporation itself is not an asset or trust fund, and it does not pass as such to a court of bankruptcy; nor can such court enforce such liability of a stockholder to assessment by the corporation itself against stockholders of such corporations to discharge the liabilities of an insolvent mining corporation.

**4. SAME—ACTION TO RECOVER ASSESSMENT.**

As to whether a personal action will lie against a stockholder to recover an assessment levied by such corporations, *quære.*

In Bankruptcy. Petition for review.

*Rhodes & Barstow* and *J. B. Crockett,* for petitioners.

*McAllister & Bergin, contra.*

SAWYER, C. J. After a careful examination of this case, I have reached the conclusion that the district court was right in its rulings upon the decisive points involved. The views of the district judge are stated in his opinion filed in the case reported in 7 Sawy. 31. I adopt generally those views, and they are so fully and clearly stated that it is unnecessary to further elaborate the reasons given. There can be no doubt that the conclusion reached by the district court with reference to the responsibility of stockholders in ordinary mining corporations, as they have existed in this state, is in accordance with the opinion which has heretofore generally, if not universally, prevailed in the state since the passage of the law relating to corporations—now more than 30 years. To adopt the views maintained by the petitioner, would be to throw upon stockholders in mining corporations liabilities which they never, in fact, expressly contracted, or intended to contract, to assume; or ever supposed they had agreed to assume, even by implication.

The mode of forming mining corporations in this state, and the supposed liabilities assumed, are well known to everybody. They are

in California as much matters of universal knowledge as the principle of natural philosophy that water will seek and, if unobstructed, find its level. A prospector finds, as he supposes, or a party otherwise obtains title to, a valuable mine. It requires capital to work it, which he does not possess. He goes to the money and business centers, where he finds capitalists, or parties who are in communication with capitalists, accustomed to organize corporations for the development of new mines, and makes such arrangements as he can. He presents such evidence of the value of his mine as he has obtained. Little is known of its real value. It may be worth nothing; and it may be worth many millions. Parties are found willing to take hold of the enterprise. They agree to incorporate, fix the capital stock at some purely nominal amount, and divide it into a certain number of shares, corresponding to the amount of capital adopted. The owner of the mine, for an agreed number of these shares, and in consideration of the promise of the other parties to assist in the development of the mine, conveys the mine, and receives for it the amount of stock agreed upon. The other parties, for their services in organizing and managing the company and its business, receive a large portion of the remaining stock, there being usually a considerable amount of the stock reserved by the company, which is put upon the market, and sold for such price as can be obtained, to raise a fund to procure machinery and develop the mine. The price of this stock is, of course, determined by the prospect of the mine, its location, its probable richness, and the confidence of the public reposed in the experience, ability, and character of those having the management. This is the common mode of procedure. But it may be infinitely varied in detail and circumstance. No one, in fact, subscribes for any particular amount of stock, or expressly contracts, or intends to contract, to pay the nominal amount expressed in his certificate of stock, or supposes that he has so contracted, by implication or otherwise. Upon the organization of the corporation, by-laws are adopted, by which the liabilities of the stockholders are extended or limited, so far as admissible under the statute, according to their own views of expediency. This is, however, by contract, and depends upon their own volition. Then there are the limited personal liabilities for the indebtedness of the corporation, thrown upon the stockholders by the constitution and the laws of the state; and the liability to assessment prescribed by the statute, sometimes perhaps modified or enlarged by the articles of association and by-laws. Not only all those who organize these corporations in the mode indicated, and all who purchase the stock, or in any way

deal in it, including those who buy the stock sold to raise a fund to develop the mine, but all who deal with the corporation, fully understand these matters, well knowing what the general understanding and practice is. I apprehend that a purchaser of stock in a mining corporation, with a mere nominal capital of $10,000,000, in the daily transactions of the stock board in San Francisco, would be very greatly astonished, in case the corporation should turn out to be bankrupt at the time, to find that he had, by his simple purchase, contracted to pay up his share of the $10,000,000, nominal capital, should that amount be found necessary, in a court of bankruptcy, to discharge the obligations of the corporation. Such a discovery would very soon close out all dealings in mining stocks, in such corporations, as they are now organized.

Mining corporations in California are, in these particulars, *sui generis*. They are organized and carried on upon principles, in these respects, wholly different from banking, railroad, insurance, and like commercial corporations having a *subscribed* capital stock. There is no agreement, express or implied, to pay up any particular amount of stock, and no one understands that there is. Certainly, none is intended by the parties. If there is a contract to pay up the full nominal amount of the stock it could be called in from time to time without regard to the liabilities or needs of the corporation. There being no such agreement, there is no contract or agreement to pay up capital stock which can constitute an asset of the corporation. There is a mere power of assessment for a specific, limited purpose, under the statute and by-laws—not a contract to pay generally in installments upon call; but this mere power to assess, independent of any contract, express or implied, to pay up the nominal amount of capital stock in installments, is not an asset of the corporation, and counsel for the petitioner do not claim that it is. They insist that there is a contract to pay the amount of the capital stock, by implication at least. There being nothing but a power to assess for a specific purpose, that power is not an asset, and it does not pass to the court of bankruptcy as such. The creditor, in my judgment, in this class of corporations, is limited in his remedy to be enforced *in invitum*, to the assets of the corporation, strictly such, and the restricted personal liability of the stockholders under the constitution and laws of the state. See *Foreman* v. *Bigelow*, 4 Cliff. 508. I am not aware that it has ever been supposed till recently that there was any such remedy in this class of cases as is now sought. Recent decisions of the courts in the eastern states in relation to commercial corporations having a *subscribed* stock,

organized and carried on upon different principles, have suggested to creditors the application of the remedy to mining corporations. So far as my knowledge extends, this is the first instance in this state of any attempt to enforce a remedy which could not have been contemplated by the creditors of this or any other mining corporation when the indebtedness was contracted. Should it succeed, it would, in my judgment, place the liability of all stockholders in the vast number of mining corporations in this state upon a basis entirely different from that upon which they supposed they stood at the time they became stockholders, and different from that prescribed by the constitution and statutes of the state. Such a change should only be effected by express legislative action, and made applicable to the future. For a further discussion of the question see the opinion of the district judge cited. 7 Sawy. 31. I am not prepared to say now that an assessment properly levied by the directors of a corporation, under the statute, may not be collected by a personal action, instead of by a sale of stock. I do not think it is necessary to go so far to sustain the order of the district court, of which a review is now sought, and I therefore express no opinion upon that point either way.

I think the order of the district court should be affirmed. It is so ordered, and the petition for review dismissed.

See S. C. 5 FED. REP. 403