[Civ. No. 3244. Second Appellate District, Division Two.—December 31, 1920.]

## CLAUD B. ANDREWS, Appellant, v. PANAMA OIL COMPANY et al., Defendants; ROBERT F. O'BRIEN et al., Respondents.

[1] CORPORATIONS—EXCHANGE OF STOCK FOR OVERVALUED PROPERTY—LIABILITY OF STOCKHOLDERS—FRAUDULENT INTENT. — Stockholders of a corporation cannot be held personally liable for any difference between the true worth of property exchanged for stock and the par value of the stock in the absence of proof that the exchange was made with fraudulent intent.

[2] PURCHASE OF WATERED STOCK—LIABILITY FOR UNPAID SUBSCRIPTION.—Stockholders who are not subscribers to the stock of a corporation are held to assume the unpaid portion of the subscription price when it appears they have accepted stock ostensibly fully paid, but in reality issued as such in exchange for property

---

1. Liability to creditors of corporation of person purchasing stock for property or services worth less than par value of stock, note, Ann. Cas. 1915A, 1269.

at a gross overvaluation, with knowledge of the transaction through which the watered stock was issued.

[3] ID.—GUILTY KNOWLEDGE OF PURCHASER—PLEADING AND EVIDENCE. The burden of alleging and proving notice of the taint in the original transaction is cast upon the party who would advantage himself of the responsibility resulting from the fraud.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry K. Norton, Roy V. Rhodes and Wilbur Bassett for Appellant.

John A. Powell, Goodwin & Morgrage and C. C. Mishler for Respondents.

WELLER, J.—Plaintiff seeks by this suit to subject alleged unpaid subscriptions of the defendants, as stockholders, to the payment of the corporation's indebtedness.

The Panama Oil Company was organized under the laws of California in May, 1912, with an authorized capital stock of 2,000,000 shares, of the par value of one dollar each. On May 24, 1912, one J. B. Hedrick offered to transfer to the corporation, in exchange for all of its capital stock fully paid, certain property, consisting of stock in another oil company, an option in favor of Hedrick, and a lease on oil lands in Kern County. The board of directors of the Panama Oil Company accepted this offer, reciting in the resolution of acceptance that in their opinion the property offered was worth fully the sum of $2,000,000. Pursuant to the order of the board of directors, all of the stock was issued to Hedrick as fully paid, on his conveying to the corporation the property offered in exchange. Thereafter the Panama Oil Company became indebted to the American Contracting and Drilling Company, and, on July 12, 1913, in full payment and satisfaction of its indebtedness, executed to the latter corporation its promissory note for the sum of $11,525.03, due six months after date, bearing interest at seven per cent per annum. This note was assigned, in good faith and for value, before its maturity, to the American Well and Prospecting Company, and by it transferred to the plain-

tiff for collection after it became due by its terms. On
March 6, 1916, the Panama Oil Company forfeited its
charter for nonpayment of its license tax, being at that
time and ever since wholly insolvent and without assets of
any kind. The defendants, other than Wilbert Morgrage,
became the owners of stock in the Panama Oil Company
through purchase from Hedrick or his assigns, subsequent
to the transaction by which he acquired the stock. The
court found that Morgrage never was a stockholder of the
corporation. This finding is attacked as not being justified
by the evidence; but for reasons which will presently ap-
pear, it is unnecessary to consider the sufficiency of the
evidence on this point.

It was stipulated at the trial that at the time the stock
was issued to Hedrick, the real market value of the prop-
erty exchanged by him for the stock was $500,000, and
that the American Contracting and Drilling Company ac-
cepted the note with full knowledge that all of the stock
of the Panama Oil Company had been issued to Hedrick
as fully paid and nonassessable, in exchange for property
of the market value of $500,000 and no more.

It is not alleged in the complaint that any of the de-
fendants were aware of the dealings between the Panama
Oil Company and Hedrick, and no proof was offered tend-
ing to show that any of them had any knowledge or notice
of the manner in which Hedrick became the owner of the
stock. The complaint does not aver that the defendants
were subscribers to the stock, but states merely that on
the fourth day of March, 1914, they were the owners and
holders of stock of the Panama Oil Company. We are
unable to determine from the record that any of the de-
fendants was a stockholder at the time of the execution
of the note on which plaintiff sues, or that credit was ex-
tended to the corporation on the faith of their unpaid
subscriptions. As we understand the theory of plaintiff,
gathered from the record and the briefs, it is contended
that where stock is exchanged for property, a conclusive
presumption of fraud arises upon a showing of disparity
between the actual value of the property and the par
value of the stock, creating a personal liability for the
difference which attaches to the holder of any stock so
issued, regardless of his knowledge of or participation in,

the transaction. The complaint alleges merely that the corporation had not received from the defendants, or the former owners of the stock, more than twenty-five cents per share. No proof appears in the record of bad faith on the part of the directors who acted on Hedrick's offer. The inference of fraud must rest entirely upon the fact that the property received in exchange for the stock was overvalued, as shown by the stipulation that it was worth only $500,000.

Expressions of the courts in some of the earlier cases in this state might seem to imply force to appellant's argument. The trend of the later decisions, however, is to apply to this class of cases the same principles as pertain to fraud in other business dealings.

[1] It is not sufficient to prove merely that property was overvalued in an exchange for stock, but it must be clearly shown that it was done with fraudulent intent. Directors may be honestly mistaken as to the value of the property, and in the absence of proof that their overvaluation was not the result of an innocent mistake, the stockholders cannot be held liable for any difference between the true worth of the property and the par value of the stock. (*Herron Co.* v. *Shaw*, 165 Cal. 668, [Ann. Cas. 1915A, 1265, 133 Pac. 488].) [2] Stockholders who are not subscribers to the stock of a corporation are held to assume the unpaid portion of the subscription price when it appears they have accepted stock ostensibly fully paid, but in reality issued as such in exchange for property at a gross overvaluation, with knowledge of the transaction through which the watered stock was issued. Such guilty knowledge is essential to bind the purchaser of watered stock to respond to an equitable call in behalf of the creditors of the corporation. [3] The burden of alleging and proving notice of the taint in the original transaction is cast upon the party who would advantage himself of the responsibility resulting from the fraud. (*Rhode* v. *Dock-Hop Co.*, 184 Cal. 367, [12 A. L. R. 437, 194 Pac. 11].) Any other rule would subject the prospective purchaser of stock in a corporation to unjust hardship. He would not be permitted to rely upon the records of the corporation, but would be required to investigate the *bona fides* of all trades previously made by the company,

and, in addition, have an appraisement of all its property at the time of its acquisition, under penalty of assuming to pay any difference between the value of the property and the stock issued in payment therefor when demanded by creditors of the corporation.

The record in the instant case fails to disclose any intentional fraud perpetrated by the directors of the Panama Oil Company in the negotiations with Hedrick, or that they knew that the value of the property taken in exchange for the stock was less than the par value of the stock. As before stated, there is nothing tending to implicate either of the defendants in the deal, or to bring home to them notice of any facts which would put them on inquiry as to the fairness of the exchange. So far as appears, they were innocent purchasers, and therefore cannot be held liable for any portion of the subscription price which might be construed to have been unpaid by Hedrick when the stock was transferred to him by the corporation as fully paid.

For these reasons, it is not necessary to consider any other points raised by appellant.

Judgment affirmed.

Finlayson, P. J., and Thomas, J., concurred.