[Civ. No. 3670. First Appellate District, Division One.—May 5, 1921.]

THE CALIFORNIA NATIONAL SUPPLY COMPANY (a Corporation), Respondent, v. FRONIA MAY DINSMORE, Administratrix, etc., et al., Appellants.

[1] CORPORATIONS—OVERVALUED PROPERTY—LIABILITY OF STOCKHOLDERS TO CREDITORS.—Stockholders of a corporation who receive shares of stock ostensibly fully paid but not so in fact for overvalued property and those subsequently taking the stock with notice of the original transaction are bound to make good the difference between the value of the property and the par value of the stock to creditors extending credit without notice of such overvaluation.

---

1. Liability of purchasers of stock from corporation at less than par to creditors of corporation, notes, 5 **Ann. Cas.** 667; **Ann. Cas.** 1915A, 1269.

[2] ID.—MANNER OF ACQUISITION—IMMATERIALITY AS TO LIABILITY.—
There is no real distinction between one who takes stock not fully
paid from the original holder and one who acquires it by direct
purchase from the corporation after it has vested in the treasury,
and in either case before the transferee can be held liable to the
creditor, it must be shown that he participated in the original
transaction or received his stock with knowledge thereof.

[3] ID.—RECOVERY BY CREDITOR—KNOWLEDGE OF ISSUANCE OF STOCK—
EFFECT OF.—A creditor of a corporation who extends credit with
knowledge of the issuance of the stock at an overvaluation cannot
recover in a court of equity on a creditor's bill against the holders
of such stock.

[4] ID.—APPLICABILITY OF RULE TO MINING CORPORATIONS.—The rule
that a creditor may recover against the stockholders of a defunct
corporation the difference between the price paid by the stock-
holders for their stock and the par value thereof, and apply the
same to a satisfaction of judgment held by him against the cor-
poration, applies to mining corporations.

[5] ID.—DISSOLUTION OF CORPORATION—FAILURE TO PAY LICENSE TAX
—EFFECT UPON OBLIGATIONS—STATUTE OF LIMITATIONS.—The dis-
solution of a corporation by operation of law for failure to pay
its license tax does not have the effect of maturing its obligations.

APPEAL from a judgment of the Superior Court of
Los Angeles County. Frederick W. Houser, Judge. Re-
versed.

The facts are stated in the opinion of the court.

Haas & Dunnigan and J. J. Wilson for Appellants.

Flint & MacKay for Respondent.

WASTE, P. J.—The plaintiff, a judgment creditor of the
Rex Midway Oil Company, now defunct, for failure to pay
its state license tax, brought this action against the de-
fendants, J. H. and Fronia May Dinsmore, alleging them
to be the holders of "watered stock" of the corporation.
It seeks to recover from the defendants their proportionate
share of the difference between the amount at which they
purchased the stock and its par value and to have the
amount applied in liquidation of its claim. Judgment was
entered for the plaintiff, and the defendants appealed. The

3. Knowledge by creditor that stock is unpaid as affecting stock-
holder's liability, note, 7 **A. L. R.** 972.

defendant J. H. Dinsmore died after the appeal was perfected, and on suggestion of his death, it was ordered that the action be continued against his administratrix with the will annexed, in his place and stead.

The findings closely follow a written stipulation of facts which is brought here in the bill of exceptions. The Rex Midway Oil Company was incorporated April 21, 1910, with an authorized capital stock of $250,000, divided into 1,000,000 shares of the par value of twenty-five cents each. When organized it purchased from F. H. Lathrop a lease held by him of certain property in Kern County, supposed to be oil-bearing land. In payment, and by way of exchange for this lease, the company issued to Lathrop 999,980 shares of the capital stock, with an agreement on the part of Lathrop and the company that all of said stock was fully paid. Lathrop immediately returned to the company, and contributed to the treasury, 950,000 shares of such fully paid stock for the general use and benefit of the corporation, to be sold as its board of directors should deem expedient, and at such price as the board should determine. The only consideration received by the Rex Midway Oil Company for the issuance of the stock to Lathrop was the transfer by him of the leasehold interest, the actual and market value of which was never in excess of the sum of $2,000, a fact well known to each of the directors of the company. They had no reasonable ground for considering it worth any greater amount, but believed that the property might be developed and made valuable.

The corporation subsequently increased the amount of its capital stock to $1,000,000, divided into a like number of shares of the par value of one dollar each. At the time of this increase the assets of the Rex Midway Oil Company were not worth more than $2,000, a fact well known to the directors. Some time later the defendants acquired their stock, the greater part of which was purchased directly from the company and was an original issue of a portion of the treasury stock returned to the corporation by Lathrop. The remaining shares were acquired by them from other parties who had purchased directly from the company, and were also a part of the retransferred treasury stock. The certificates of stock received by the defendants contained the statement that the authorized capital stock of

the company was $1,000,000, having a par value of one dollar per share. It does not appear, however, what price the defendants paid for the stock, or whether they took it as partially or wholly paid. After the defendants became stockholders in the corporation the plaintiff sold and delivered certain goods, wares, and merchandise to the Rex Midway Oil Company for which it received a promissory note, dated April 23, 1913, for the sum of $3,074.03, due sixty days after date, with interest at the rate of seven per cent per annum from date until paid. On November 30, 1913, following the execution of the note, the Rex Midway Oil Company forfeited its charter to the state by reason of its failure to pay the license tax imposed upon it, which became due on July 1st of that year. The note not being paid, plaintiff commenced an action against the directors, as trustees of the corporation, to recover the amount due, and on May 11, 1915, a judgment was entered in its favor in the sum of $3,389.32. Execution was returned wholly unsatisfied on June 4, 1915, and no portion of the judgment has been paid except the sum of $75.18.

The present action was brought by the plaintiff against the defendants as two of the stockholders of the defunct corporation on their alleged liability on this unsatisfied judgment. After allowing defendants a credit of twenty-four and four-fifths cents per share on the amount of their stock, by reason of the satisfaction of a judgment obtained against them and other stockholders in another action, the lower court found the defendants, and each of them, to be liable to plaintiff in the sum of seventy-five cents on each share of stock owned by them, not to exceed in the case of either of them, the amount of the obligation here sued upon, together with interest. From the judgment entered in accordance with these findings, this appeal is prosecuted.

The judgment must be reversed. The relationship and the liability imposed upon corporation stockholders owning shares ostensibly fully paid but not so in fact have been so recently considered in and, we think, definitely settled by two recent decisions of the supreme court, handed down after the preparation and submission of this appeal, that we do not think it necessary or expedient to enter into a discussion of those interesting questions. [1] Suffice it to say that under these decisions the stockholders who re-

ceived this stock in exchange for the property, and those subsequently taking the stock with notice of the original transaction, were bound to make good the difference between the value of the property transferred and the par value of the stock, to creditors extending credit without notice of such overvaluation. (*Rhode* v. *Dock Hop Co.*, 184 Cal. 367, [12 A. L. R. 437, 194 Pac. 11]; *Sherman* v. *S. K. D. Oil Co.*, 185 Cal. 534, [197 Pac. 799].) [2] As we understand the rule established by those opinions, there is no real distinction between one who takes stock, not fully paid, from the original holder, and one who acquires it by direct purchase from the company after it has vested in the treasury of the corporation. In either case, before the transferee can be held liable to the creditor, it must be shown that he participated in the original transaction or received his stock with knowledge thereof. In this case it is not alleged, stipulated as a fact, nor found that the defendants were parties to the original transaction, by which the entire capital stock of the Rex Midway Oil Company was issued for the greatly overvalued oil lease, or that as transferees they had any notice of, or became parties to, that proceeding. Consequently they cannot be compelled to make good the false representation as to the capital of the company which they had no part in making, and the responsibility for which they have done nothing to assume. The two decisions last noted so hold.

[3] In view of the possibility of another trial we deem it proper to consider other points arising on this appeal. It is claimed by the appellants that the plaintiff extended its credit to the Rex Midway Oil Company with knowledge of the issuance of the stock at an overvaluation. If that were so the plaintiff may not recover in a court of equity on a creditor's bill. (*Rhode* v. *Dock Hop Co.*, supra; *Sherman* v. *S. K. D. Oil Co.*, supra; *Sherman* v. *Harley*, 178 Cal. 584, 590, [7 A. L. R. 950, 174 Pac. 901].) It was found by the trial court that neither prior to the time the plaintiff first dealt with the Oil Company, nor at any time while credit was being extended to it by plaintiff, was plaintiff informed, nor did it have any knowledge that the Oil Company had issued and sold the shares to F. H. Lathrop as fully paid, and that it had no knowledge of the transactions of the Oil Company with respect to the sale and

issuance of its capital stock. The impelling force of this finding, which is but a repetition of the stipulated fact, is not overcome by certain other findings from which it appears that the plaintiff had for many years prior to its dealings with the Oil Company been engaged in the business of selling tools, appliances, and supplies to persons and corporations engaged in drilling for oil in California, particularly those operating in Kern County, and was generally familiar with the practices and methods of acquiring and developing oil lands.

[4] Although engaged exclusively in the business of prospecting for oil, the Rex Midway Oil Company was incorporated in the manner, and for the general purpose of mining. Appellants contend that the rule allowing creditors to recover against the stockholders of a defunct corporation the difference between the price paid by the stockholder for his stock and the par value thereof, and apply the same to the satisfaction of a judgment held by the creditor against the defunct corporation, does not apply to mining corporations. They cite a number of cases from other jurisdictions, and rely with much assurance upon the case of *In re South Mountain Con. Min. Co.*, 14 Fed. 347, to support this contention. But our own supreme court, in a comparatively recent decision, held that the rule enunciated in *Herron v. Shaw*, 165 Cal. 668, [Ann. Cas. 1915A, 1265, 133 Pac. 488], and in *Harrison v. Armour*, 169 Cal. 787, [147 Pac. 1166], is a general rule, applicable to all classes of corporations, and that the decision in the South Mountain Mining Company case no longer properly expresses the law in force in this state. (*Hasson v. Koeberle*, 180 Cal. 359, 365, [181 Pac. 387].)

[5] The Rex Midway Oil Company forfeited its charter on November 30, 1913. Appellants contend that the consequent dissolution of the corporation had the effect of maturing its obligations, and that recovery against them is for that reason barred by various provisions of the statute of limitations. This contention has been effectually disposed of by the very recent decision of the supreme court in *Sherman v. S. K. D. Oil Co., supra,* in which it was held that the dissolution of a corporation, by operation of law for failure to pay its license tax, does not have the effect of maturing its obligations. The original obligation

of the Rex Midway Oil Company, the promissory note executed to plaintiff, was given April 23, 1913. Judgment against the trustees of the defunct corporation was entered May 11, 1915, and execution returned *nulla bona* June 4th of the same year. The present cause of action was, therefore, not barred by any of the provisions of the statute when the complaint was filed on December 20, 1916.

The judgment is reversed, and the lower court is directed to grant permission to the parties to amend their pleadings if so advised.

Kerrigan, J., and Richards, J., concurred.