# HOOD, AS TRUSTEE, Etc.

## VS

# FREDERICK STERN

## SUPERIOR COURT, COUNTY OF SAN FRANCISCO

(Corporations; Bonus Stock; Fraud; Escrow; Liabilities)..

1924.

---

Suit by Walter Hood, as trustee in bankruptcy of the Mercantile Finance Company against Frederick Stern.

Judgment for plaintiff.

---

1. CORPORATIONS — STOCK — NOT FULLY PAID IN FACT—COMMISSIONERS PERMIT CANNOT MAKE IT SO.

While Civil Code Section 359 prohibits corporations from issuing stock except for money paid, labor done or property actually received, and the issuance of stock in strict accordance with the permit to issue common stock, one share in payment for each share of preferred stock sold, might estop the corporation and its share-holders from claiming the stock was not fully paid, yet if not in fact fully paid the permit of the Commissioner cannot make it paid or give holder immunity from liability to creditors.

2. CORPORATIONS — BONUS OR GIFT STOCK — UNINFORMED CREDITORS.

The acceptance of bonus or gift of stock imposes an obligation under the statutes to pay for the shares so far as necessary to satisfy claims of uninformed creditors.

3. CORPORATIONS — FRAUD — PAYMENT IN STOCK—OVERVALUATION‘

The liability of the holder of stock issued for property or services is determined by "the good faith rule" and there must be a reasonable approximation in values and the stock will be deemed paid only to extent of fair value rendered for it and any known overvaluation is a constructive fraud upon creditors.

4. CORPORATIONS — CREDITORS — WATERED STOCK--TRUST FUND THEORY ABANDONED FOR TORT THEORY.

Not every creditor may have recourse against the holder of watered stock for the trust fund theory is now generally

abandoned and recovery is predicated, not  on the implied promise of payment, but on the tort committed in falsely representing the capitalization and thereby obtaining for the corporation unmerited credit.

5. FRAUD — CORPORATIONS — STOCKHOLDERS — KNOWLEDGE OF CREDITOR.

When a corporation was permitted to pay stockholder one share of common stock for each share of preferred stock sold by him and he was guilty of fraud in selling preferred stocks he held the common stock as if issued without present payment and without pretense of sale of the preferred and while a creditor with knowledge could not claim he was defrauded, it is not enough to say he had sufficient information to put him on inquiry.

6. CORPORATIONS — CREDITORS — STOCK NOT HELD VOID.

Without an express statutory declaration, stock will not be held void to the prejudice of creditors because of a departure from the prescribed terms of sale or issuance, even though the officers might be subject to penal consequences, in view of Corporate Securities Act section 12.

7. CORPORATIONS — STOCKHOLDERS' LIABILITY TO CREDITORS.

Although stock is issued in violation of law, the stockholders liability to creditors may be the same as if a bona fide subscriber.

8. CORPORATIONS — BONUS STOCK — ILLEGALLY ISSUED — HOLDERS MUST PAY.

Holders of bonus stock are required to pay for their shares, even though illegally issued, when necessary to satisfy claims of qualified creditors.

9. CORPORATIONS — STOCKHOLDER — ACCEPTANCE OF STOCK SUFFICIENT — SUBSCRIPTION UNNECESSARY.

One may become a stockholder through acceptance alone without ever having been a subscriber; and if the stock was issued contrary to law, he cannot for that reason escape the concomitant liability of a regular stockholder.

10. CORPORATIONS — CREDITORS RIGHTS AGAINST STOCKHOLDERS.

As to creditors rights there can be no distinction drawn between one who in form subscribes for original stock agreeing to pay less than its par value therefor and one who purchases the same at less than its par value.

**11. CORPORATIONS — STOCKHOLDERS — UNPAID BALANCE ON SUBSCRIPTION.**

A subscriber who has not paid in full is always liable to creditors of an insolvent company to the extent of his unpaid balance.

**12. ESCROW — DEPOSIT OF STOCK HELD NOT AN ESCROW.**

A deposit of stock certificate with a bank and later with the Commissioner of Corporations held not an escrow, the depository being a mere custodian of property to which title had already passed.

**13. CORPORATIONS — BANKRUPTCY — TRUSTEE MAY SUE STOCKHOLDERS FOR CREDITORS.**

A Trustee in Bankruptcy is competent to sue the stockholder of an insolvent corporation on behalf of its creditors to recover on stock fraudulently obtained.

---

**Walter Perry Johnson, Judge.**

---

In the Superior Court of the State of California,

In and for the City and County of San Francisco.

### Dept. No. 14.

Walter Hood, as Trustee, etc.,   Plaintiff.

vs.                              No. 126601

Frederick Stern,   Defendant.

### Memorandum of Decision.

Plaintiff sues as the trustee in bankruptcy of Mercantile Finance Company, of which the defendant, Frederick Stern was president and general manager. The claims of creditors being $130,654.75 in excess of all assets, recovery of this sum is sought from the defendant as a stockholder with 1,972,075 shares of common stock, mostly unpaid.

The permits of the Commissioner of Corporations authorized the sale of the company's preferred stock for lawful money of the United States, but all save an insignificant portion of the preferred stock was issued at Stern's instance for promissory notes known by him to be worthless.

As compensation for services in selling preferred stock upon the terms stated in the permit, authority was given also to issue to Stern common stock, share for share as preferred stock was sold.    And, under color of this authorization, Stern received and placed in escrow certificates for 1,972,075 shares of common stock, which, with one share of preferred, enabled him to maintain permanent management and control of the corporation, the board of directors comprising himself and his appointees.

A mere permit to issue common stock did not, however, make that stock fully paid.    Section 359, Civil Code, following the constitutional provision, declares that no corporation shall issue stock except for money paid, labor done or property actually received.    The issuance of common stock in strict accordance with the permit might estop the corporation and its shareholders from claimihg that the stock was not. fully paid.

O'Dea vs. Hollywood Cemetery Assn., 154 Cal. 53, 67;

Cal. Trona Co.   vs.   Wilkinson, 20 Cal. App. 694, 703.

But if stock is not in fact fully paid the permit of the commissioner cannot make it so, or give the holder immunity from liability to creditors.

The statutes of this State make no provision for bonus or gift stock; and the acceptance of stock of such character imposes an obligation to pay for the shares so far as necessary to satisfy the claims of uninformed creditors.    Our law upon this subject is neither obscure nor doubtful.    And it is now established un-

equivocally in this jurisdiction that if stock is issued for property or services, liability is to be determined by "the good faith rule"; and there must be a reasonable approximation in values.    Any known overvaluation is a constructive fraud upon creditors; and in an action by them the stock will be deemed paid only to the extent of the fair value rendered for it.

Herron vs. Shaw,  165 Cal., 668;

Harrison vs. Armour, 169 Cal. 787;

J. F. Lucey Co. vs. McMullen, 178 Cal. 425;

Hasson vs. Koeberle, 180 Cal. 359;

Kaye vs. Metz, 186 Cal., 42;

Zierath vs. Claggett, 46 Cal., App 15;

Andrews vs. Panama Oil Co., 50 Cal., App. 764;

Cal. N. Supply Co. vs. O'Brien, 51 Cal. App. 606.

It is not every creditor, however, who may have recourse against the holder of watered stock.    Owing largely to the reasoning in Hospes vs. N. W. Mfg. Co., 48 Minn. 174, the trust fund theory is now generally abandoned and recovery is predicated, not upon an implied promise of payment, but on the tort committed in falsely representing the capitalization of the company and thereby obtaining for the company an unmerited credit.    Such is now the rule to which this state has committed itself.

Sherman vs. Harley,  178 Cal., 584;

Rhodes vs. Dock-Hop Co., 184 Cal. 367;

Sherman vs. S. D. K. Oil Co., 185 Cal. 534;

Jose vs. Utley, 185 Cal. 656;

Spencer vs. Anderson, 67 Cal. Dec. 69;

Andrews vs. Panama Oil Co. 50 Cal. App. 764;

Cal. N. Supply Co. vs. O'Brien, 51 Cal. App. 606;

Cal. N. Supply Co. vs Dinsmore, 52 Cal. App. 513;

A study of the facts of this case compels the conclusion that a fraud was perpetrated by Stern upon the corporation and its creditors.

His services in reference to almost the entire issue of preferred stock were of no appreciable value. Not only is that the case, but the issuance of the preferred and common stock together was calculated to convey the assurance that full payment in money had been made for all the outstanding preferred stock, and to induce reliance upon the possession by the company of a corresponding amount of working capital. There was nothing to lead creditors to suspect that in reality the capital was represented for the most part by mere scraps of paper uttered by impecunious subscribers.

The issuance of common stock with the preferred was all of one piece; and for the purposes of this case there can, to my mind, be no segregation of the fraud in its relation to common stock from the fraud in relation to the preferred. Indeed we have here not a case of mere constructive fraud but of conscious, actual fraud.

The issuance of common stock amounted to a false and fraudulent representation that Stern had earned that stock by selling a like quantity of preferred for cash. As a matter of fact, except as to a small quantity, he had not earned the common stock at all, and his liability can be no less than if common stock had been issued to him under some other form of permit without present payment and without pretense of any sale of preferred.

Of course a creditor with knowledge of Stern's dealings could not plead that he was defrauded, but it is not enough to say that the creditor had information sufficient to put him on inquiry. It must appear that he had full and actual knowledge of the real facts.

Sherman vs. Harley, 178 Cal. 584:

Zierath vs. Claggett, 46 Cal. App. 15, 19:

Cal. N. Supply Co. vs. O'Brien, 51 Cal. App. 606.

It is not contended here that any creditor knew that Stern, as the president of the company was issuing to himself bonus stock without genuine sales of preferred; and his act in so doing was as mischievous a fraud as if, tho authorized to issue stock to himself only in exchange for specific real or personal property, he had taken the stock without transferring any of the property.

As is said in Cal. Trona Co. vs. Wilkinson, 20 Cal. App. 694, 706, the transaction must be a real one, based on a present consideration and having reference to legitimate corporate purposes; and it must not be a mere device to evade the law and accomplish that which is forbidden by the Constitution.

I am satisfied therefore, that the creditors have brought themselves within the protection of the authorities invoked in their behalf.

An analogous case, well worth reading, where the stock was issued for services of a director, is found in Randall Co. vs. Sanitas Co., 120 Minn. 268 (139 N. W. 606).

It remains still to consider the other points urged in defense, the contention being that if the common stock was issued in contravention of the permit, the issue is void and imposes no liability, and further, that by reason of the socalled escrow of the stock certificates pursuant to the terms of the commissioner's permit, title never vested in Stern.

As to the status of the stock, I do not think it utterly void under Section 12 of the Corporate Securities Act. That section invalidates a security if sold without permit, or if the security does not contain provisions directed by the permit to be embodied in it. Here there was a permit for the issuance of common stock, and the permit specified nothing as to the contents of the stock certificate. Without an express declaration in the statute, stock will not be held void

to the prejudice of creditors because of a departure from the prescribed terms of sale or issuance, even tho the officers might be subject to penal consequences.

Winters vs. Lindsay, 52 Cal. App. 93;

Domenigoni vs. Imp. L. S. Assn., 189 Cal. 467.

Furthermore according to the weight of authority, even if stock is issued in violation of law, the liability of the stockholder to creditors may, nevertheless be the same as if he had been a bona fide subscriber.

Thus in Richardson vs. Green, 133 U. S. 30, 45, where stock was issued in violation of the laws of Michigan, the court said:

After having exercised all the privileges and powers of a stockholder of the corporation, it cannot be seriously contended that he is to be held exempt from the liabilities that would attach to a bona fide share holder who has taken shares purporting to be paid up, but which in truth are not paid up.

Most of the states have constitutional provisions similar to ours relative to the issuance of stock, and I find that the general current of authority requires holders of bonus stock to pay for their shares, even though illegally issued, when payment is necessary to satisfy claims of qualified creditors.

An illustration of this rule is exhibited in O'Bear Glass Co. vs. Antiexplo Co., 101 Texas 431 (108 S. W. 967), where an unpatented proprietary formula was transferred in exchange for stock. The court held that such property was of too shadowy and unsubstantial a nature to be susceptible of pecuniary estimation, and that it constituted no payment within the meaning of the Constitution. Tho the stock was thus issued in violation of the Constitution, those who accepted it were nevertheless held liable to creditors for the face value of the shares.

In other words, according to the best authority, the stockholder's status is not dependent upon subscription for stock.    One may become a stockholder thru acceptance alone without ever having been a subscriber; and if he has accepted stock which proves to have been issued contrary to law, he cannot for that reason escape the concomitant liability of a regular stockholder.    He is held to the same accountability to creditors as a subscriber who has not fully paid the subscription price.    See

Holcombe vs. Trenton White City Co., 80 N. J. Eq. 122, 135 (Affd. 82 N. J. Eq. 364);

Gilson vs. Appleby, 82 N. J. L. 400;

Hebbard vs. S. W. L. & C. Co., 55 N. J. Eq. 18, 31.

I do not lose sight of the fact that a different view is expressed in Kellerman vs. Maier, 116 Cal. 416, and J. F. Lucey Co. vs. McMullen, 178 Cal. 425, 430, which rely without discussion on Christenson vs. Eno. 106 N. Y. 97.    That case holds that to acquire the status of a stockholder under an original issue, there must be a subscription; and that without subscription there can be no liability.    This rule is entirely out of harmony with the conclusions reached in other jurisdictions; and in the more recent case of Southworth vs. Morgan, 205 N. Y. 293, Chief Justice Cullen, while concurring in the decision based on Christenson vs. Eno, stated that he did so on the sole ground that the question had been settled for that court by its previous decisions, and that if the question had been an original one, he would have reached a contrary conclusion.

In this state the prevailing view is expressed in Merchants Agency vs. Davidson, 23 Cal. App. 274, 280 in the following language:

As to the rights of creditors of an insolvent corporation to enforce such payment, no distinction can be drawn between the case of one who in form subscribes for original stock agreeing to pay less than its

par value therefor, and one who purchases original stock at less than its par value.

And in Walter vs. Merced Academy Assn., 126 Cal. 582, 584, in response to a defense that the purposes set forth in the articles of incorporation varied from those stated in the subscription agreement the Court declared:

In the case at bar, however, the complaint sets out, and the evidence shows, that appellants were at all the time mentioned in the complaint and still are, the owners of shares in the corporation.    To become the owners of shares and the holders of original certificates of the first issue it was not necessary that appellant should have subscribed to any subscription agreement at all. "It would be a mockery of justice to permit such an objection to prevail." (Sanger vs. Upton, 91 U. S. 56.)    "Merely accepting and holding a certificate of stock is sufficient to constitute one a shareholder."    ( Cook  on Stock and  Stockholders, sec. 52; Upton vs. Tribilcook, 91 U. S. 45.)

Bearing these principles in mind, I think in the light of the later decisions of our courts, which in the absence of a subscription base liability to creditors in actions like this, not on contract, but on tort, the New York rule, inconsiderately followed in the Kellerman vs. Maier and Lucey Co. vs. McMullen, can no longer be said to obtain here.    See

Rhodes vs. Dock-Hop Co., 184 Cal. 367, 376;

Spencer vs. Anderson, 67 Cal. Dec. 69, 71.

Andrews vs. Panama Oil Co., 50 Cal.App. 764, 767.

Even if the Corporate Securities Act made the issue of the common stock to Stern void as between him and the corporation, I should still hold that by acceptance of the stock Stern made himself liable to creditors who gave credit on the faith of the ostensible capital.    Toward them Stern, as an acceptor of shares for which he gave no substantial return, as-

sumed the same obligation as if he had been a subscriber at par.

And a subscriber who has not paid in full is always liable to creditors of an insolvent company to the extent of his unpaid balance.

Vermont M. Co. vs. Declez G. Co., 135 Cal. 579; .

Herron vs. Shaw, 165 Cal. 668;

Home Sav. Bank vs. Los Angeles C. R. Co. 176 Cal. 731;

Sherman vs. Harley, 178 Cal. 584;

Rhodes vs. Dock-Hop Co., 184 Cal. 267;

Mills vs. Brady, 185 Cal. 317;

Kaye vs. Metz, 186 Cal. 42.

Moore vs. Moffitt, 188 Cal. 1;

Spencer vs. Anderson, 67 Cal. Dec. 69, 71.

Burke vs. Maze, 10 Cal. App. 206.

It is quite clear from the record that Stern did accept the common stock and exercise the priveleges and powers of a stockholder thereunder.    The deposit of the stock certificate, first with the Fugazi Bank and later with the Commissioner of Corporations, though called an ecrow, was not properly such.    The stock was not sequestered until it had been issued and accepted; and it was then placed under guard to prevent its use by Stern for speculative purposes, until the success of the company had been demonstrated.    The depositary was a mere custodian of what had already become Stern's property, and there was no more a true escrow than when certificates are delivered in pledge to a money-lender.

The creditors are here represented by the Trustee in bankruptcy and he sues in their right.

Perkins vs. Cowles, 157 Cal. 625.

Accordingly since the plaintiff is competent to prosecute the action, and I find no substance in any of the defense urged, I must render judgment in favor of the plaintiff for the amount required to satisfy the claims of the creditors, namely, $130,654.75.

Walter Perry Johnson, Judge.